### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**KELLI LEE**                                                                          **PLAINTIFF**


**v.**                                          **Case No.  5:24-CV-05190**


**WAL-MART STORES ARKANSAS, LLC**                                **DEFENDANT**



**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO TERMINATE DEPOSITION  AND OPPOSITION TO DEFENDANT'S COUNTERMOTION FOR SANCTIONS**



COMES NOW Plaintiff, Kelli Lee, pro se, and respectfully submits this Reply in support of her Motion to Terminate Deposition (ECF No. 31) and in opposition to Defendant's Countermotion for Sanctions (ECF No. 32).

---

## I. Defendant's Late Notice Was Unreasonable

Rule 30(b)(1) requires "reasonable written notice" of a deposition. Defendant did not provide written notice until 6:03 PM on September 11, 2025—less than 15 hours before the September 12 deposition, and after business hours **(EXHIBIT A & B & C)**. Plaintiff discovered the notice late that evening/night, leaving her fewer than 12 waking hours to make travel arrangements and prepare. Such notice was unreasonable and oppressive.

---

## II. Harassing and Embarrassing Questioning

Rule 30(d)(3) permits termination when a deposition "unreasonably annoys, embarrasses, or oppresses" the

deponent. Defendant's questioning crossed this line by:

- Repeatedly accusing Plaintiff of being nonresponsive despite accurate answers;

- Badgering Plaintiff over the time she took to respond; and

- Asking whether Plaintiff's pauses were due to "drug use"—a harassing question wholly irrelevant to her claims.

Plaintiff has never used illegal drugs, alcohol, or tobacco. The question was designed to embarrass and disparage, not to discover relevant facts.

---

## III. Improper Demands for Financial Records

Defendant seeks Plaintiff's personal and business banking account details and debit card information. These demands are not relevant to Plaintiff's claims of discrimination and harassment and are disproportionate to the needs of the case under **Fed. R. Civ. P. 26(b)(1)**. Such requests serve only to intimidate and invade Plaintiff's privacy.

Defendant argues that Plaintiff's banking records might reveal outside income as a supposed explanation for alleged performance issues. This argument is speculative and unfounded. Plaintiff has produced and can further demonstrate documented work assignments showing that she completed tasks in a similar timeframe as her male colleagues when trained on work. When engineers on the team including herself were learning new tasks it took longer than the standard completion times.  Indeed, several male engineers routinely took two weeks or more to complete comparable assignments, yet they were not terminated as of Plaintiff's last day with the defendant. Plaintiff, by contrast, was held to a stricter 2–3 day standard that was not applied to others, and this discriminatory standard was used to justify her separation along with other pretextual reasons.

Because performance evidence can be established directly through work records and testimony, Plaintiff's private banking information is neither necessary nor relevant. Compelling such disclosure would shift the focus away from the merits of Plaintiff's discrimination claims and toward an invasive and irrelevant financial inquiry. Under Rule 26(b)(1), the discovery sought is **not proportional to the needs of the case**, as its minimal probative value (if any) is substantially outweighed by the burden and invasion of privacy.

During Plaintiff's full-time employment with Defendant, she performed no substantial work for her LLC, which had no active clients and generated no income, so Defendant's request for the LLC's banking records is irrelevant, disproportionate, and unnecessary under Rule 26(b)(1).

Moreover, during her employment Plaintiff routinely worked more than 40 hours per week and she took no PTO, further undercutting Defendant's theory that outside income could have caused performance issues. Defendant's request for banking records should therefore be rejected as improper, harassing, and irrelevant.

---

## IV. The Evidence Timeline Format of Plaintiff's Amended Discovery Responses Are Valid

On August 26, 2025, Plaintiff filed and served Amended Discovery Responses, expressly stating that they superseded all prior responses. Defendant nonetheless presented Plaintiff with an unverified binder of altered and/or outdated responses and attempted to bind her to them. Rule 26(e) allows supplementation and amendment, and Plaintiff properly filed notice with the Court. Defendant's attempt to disregard those amended responses was improper.

Plaintiff's Amended Discovery Responses included an evidence timeline that lists a series of events in chronological order that are relevant to Plaintiff's case. Most events on this timeline have a date, description, and link. Each event is organized with a description and a link to the supporting evidence for that event in chronological order. Evidence includes emails, messages, audio recordings, pictures, etc. Links are provided to access the evidence directly from the timeline because this provides access to the evidence in the format that Plaintiff ordinarily maintains it.

Importantly, these amended discovery responses are verified and signed by Plaintiff in compliance with Fed. R. Civ. P. 33(b)(3)–(5), whereas the binder that Defendant relies upon is not verified by Plaintiff and is not the original work product that Plaintiff shared with her former attorneys. Plaintiff does not know who altered or compiled the binder. It contains additions that she did not make, omissions she did not authorize, and a reformatting and reorganization of evidence that she did not create. Under the Rules, only verified responses carry legal effect. Defendant's attempt to substitute an unverified binder for Plaintiff's corrected, verified responses is improper.

The timeline format also provides particular value in this discrimination and harassment case involving discrimination retaliation claims. By organizing events in chronological sequence and linking directly to supporting evidence, the timeline clearly shows the relationship between Plaintiff's protected activity (such as reporting discrimination) and the Defendant's subsequent adverse actions. It also ensures that critical evidence—such as audio recordings—cannot be hidden, buried, or omitted, as could happen under Defendant's unverified binder.

Furthermore, by presenting evidence in a timeline with links, Plaintiff has organized her production in a way that ensures transparency and fairness. This method prevents cherry-picking or misrepresentation of the record, provides full context for each event, and allows both the Court and Defendant to view the evidence in the same format in which Plaintiff ordinarily maintains it, consistent with Fed. R. Civ. P. 34(b)(2)(E)(i).

Defendant suffers no prejudice from the Plaintiff's Amended discovery responses. On the contrary, they gain a clearer, more accurate, and properly verified roadmap to Plaintiff's evidence. For all of these reasons, Plaintiff's amended discovery responses — as her verified, sworn responses under oath — are the controlling record, and Defendant's reliance on an unverified binder of unknown origin is improper.

The Rules, the facts, and fairness all point to the same conclusion: Plaintiff's Verified Amended Responses control as her most recent and governing responses under oath.

## V. Unverified Binder and Emotional Distress

During the deposition, Defendant's counsel presented a binder containing hundreds of pages and attempted to have Plaintiff adopt its contents as her own work. The binder's format and contents differed from Plaintiff's original submissions, and she could not authenticate it. Plaintiff repeatedly referred Defendant's counsel to her Amended Discovery Responses **(Exhibit D & E & F)** served August 26, 2025, which supersede all prior responses, her court filings, and notes. Despite this, counsel persisted in using the unverified binder.

The deposition caused Plaintiff significant emotional distress. The questioning was harassing, forcing Plaintiff to recount repeated instances of discrimination and harassment that are the subject of this lawsuit. Finally overwhelmed after a day of improper questioning, Plaintiff began crying and was unable to continue, necessitating suspension of the deposition between 3:00 PM to 4:00 PM.

Defendant's counsel also repeatedly attempted to rush Plaintiff into giving quick answers, despite her obligation being only to provide truthful and accurate testimony—not to guess or respond at Defendant counsel's pace. Under Fed. R. Civ. P. 30(c)(1), depositions proceed as they would at trial, where witnesses are permitted to pause, reflect, and provide considered answers. No rule requires instantaneous responses, and accuracy is paramount. Plaintiff has never previously given a deposition, was representing herself without legal counsel, and was testifying about deeply personal harassment and discrimination. Opposing counsel is trying to take advantage of the plaintiff's inexperience and bring on unnecessary trauma to have her relive a bad experience.  Counsel's efforts to shame or pressure Plaintiff for not answering fast enough appear designed not to elicit facts, but to exploit her stress and to attempt to pressure her into errors that could later be used against her. By contrast, Plaintiff's careful approach gave her the opportunity to think about what she was saying and provide accurate testimony. Such tactics used by the Defendant's counsel are improper and undermine the integrity of the deposition as a fair fact-finding process. Rule 30(c)(1) states that examination and cross-examination in depositions proceed as they would at trial under the Federal Rules of Evidence (except Rules 103 and 615). This means that the structure of questioning mirrors trial practice.

However, nothing in the rule requires instantaneous responses. At trial, witnesses are permitted to pause, collect their thoughts, and then respond truthfully. The same principle applies in depositions: the purpose is to obtain accurate testimony under oath, not rapid or reflexive answers. Therefore, when Defendant's counsel insists that the witness must answer "quickly" or "without delay," that instruction misstates Rule 30(c)(1). The rule ensures trial-like questioning but does not strip deponents of the ability to consider the question, clarify if necessary, and answer truthfully. Courts have consistently recognized that deposition testimony should reflect accuracy over speed, and undue pressure to rush the Plaintiff to answer instantly may amount to improper conduct under Rule 30(d)(2) (Such conduct risks sanction under Rule 30(d)(2), which authorizes the Court to impose appropriate remedies when an attorney impedes, delays, or frustrates a fair deposition.).

Defendant's counsel later provided a binder, but it remains unverified, is not in the same format as Plaintiff's Amended Discovery Responses, and contains additions, omissions, and Bates 666 numbered pages arranged in a manner not prepared by Plaintiff. Plaintiff cannot rely on this binder for accuracy, as it was edited and organized by someone else and is not identical to what she sent her former attorneys for use by Defendant's counsel.  Furthermore, the number 666 is a number that is offensive to the Plaintiff as a born-again Christian and is not something that she would have added to documents that she created.  Plaintiff's Amended Discovery Responses remain her verified submissions and the only documents she can confirm as accurate.

---

**VI. Defendant's Improper Use of an Uncertified Transcript**

Defendant's response, filed on September 22, 2025, improperly relies on alleged quotes from the deposition transcript. This is premature and inappropriate, as the transcript is not yet finalized or certified. Plaintiff only received the transcript on September 18, 2025 and remains within the 30-day period to review.

By using those quotes now, Defendant's counsel is attempting to:

- Present an uncertified record as fact; and

- Preempt Plaintiff's corrections of the transcript, potentially creating a misleading narrative.

This conduct is another instance of bad-faith behavior by Defendant's counsel and underscores the necessity of allowing Plaintiff to review and correct the record before it is relied upon. Plaintiff is currently comparing the transcript with her own recordings and timestamps and has already discovered that Defendant's counsel inaccurately claimed she took a longer break than she actually did in one instance. As her review continues, additional discrepancies between the transcript and what actually occurred during the deposition may be identified.

Until the transcript is certified and Plaintiff has had the full opportunity to submit corrections, any reliance on it by Defendant's counsel is improper and should be disregarded.

## VII. Plaintiff Properly Invoked Rule 30(d)(3)

The deposition began around 9:00 AM and continued into the afternoon. After hours of harassing and oppressive questioning, at approximately 3:00 PM, Plaintiff became overwhelmed and broke down crying. She verbally requested a break twice, stepped out to compose herself, and returned between 3:00 PM and 4:00 PM. Upon returning, Plaintiff informed Defendant's counsel that the questioning had become harassing, that she was too stressed to continue, and that she would suspend the deposition and bring the matter before the Court under Rule 30(d)(3). Plaintiff then promptly filed her Motion with the Court. This was exactly the procedure contemplated by the Rule.

## VIII. Reasonable Breaks

During the deposition, Plaintiff requested and took breaks when the questioning became overly harassing or stressful to her as the deposition was forcing her to relive a traumatizing experience, so when she felt overwhelmed she requested a break. These breaks were reasonable and necessary to compose herself, and do

not constitute an excessive use of time under Rule 30(d)(1).  Plaintiff is currently comparing the deposition transcript with her own recordings, timestamps, and making corrections to the errata sheet and the Plaintiff has already discovered that Defendant's counsel inaccurately claimed she took a longer break than she actually did in one instance.  As her review continues additional discrepancies about defendant's break time claims and the actual amount of time taken may be identified.

The longest break was taken around lunch time; It appeared that the defense counsel and the court reporter left the building during this break. The court reporter remarked that she left for food.  The Plaintiff stayed in the building and sat in the lobby during the lunch break and didn't eat.  When they both returned, Plaintiff followed them back into the deposition room to continue the deposition.

## IX. Defendant's Attempts to Intimidate, Gain Tactical Advantage, and Extend Discovery Deadlines

In its response, Defendant requested an extension of discovery deadlines and asked the Court to appoint a "task master" to oversee the deposition and instruct Plaintiff on how to proceed. These requests are unnecessary and impose additional stress and burden on Plaintiff, who has already endured harassing and oppressive questioning during the deposition. They appear to be designed to intimidate Plaintiff into following Defendant's directives, prolong litigation, and exert tactical pressure, rather than to facilitate fair and impartial discovery.

## X. Defendant's Request for Sanctions Should Be Denied

Sanctions require a showing of bad faith or willful obstruction. Plaintiff acted in good faith throughout, pausing only to provide accurate answers and suspending the deposition only after enduring hours of harassing questioning, revisiting trauma inducing events and oppressive questioning. Plaintiff's invocation of Rule 30(d)(3) was appropriate, not sanctionable.

Defendant, by contrast, created the conditions that necessitated Court intervention by providing unreasonable notice, posing harassing questions, presenting unverified materials, and attempting to rely on an uncertified transcript. Defendant's counter-motion is a transparent attempt to shift blame away from its own conduct and should be denied.

---

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant Plaintiff's Motion to Terminate Deposition;

2. Deny Defendant's Countermotion for Sanctions;

3. Strike any portions of the transcript that cannot be verified as being accurate;

4. Preclude discovery into irrelevant personal and business financial accounts; and

5. Order that any further deposition, if permitted at all, proceed only by written questions.

Respectfully submitted,

Kelli Lee, Pro Se Plaintiff

905 W. Rock St.

Morrilton, AR, 72110

(501) 438-9330

kelli.j.lee@gmail.com

---

**DECLARATION OF Kelli Lee**

I, Kelli Lee, declare under penalty of perjury under the laws of the United States of America that:

1.  I, Kelli Lee, am the Plaintiff in this action.

2.  I have personal knowledge of the matters set forth in the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO TERMINATE DEPOSITION AND OPPOSITION TO DEFENDANT'S COUNTERMOTION FOR SANCTIONS**. The facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on this __24__ day of ___September___, 2025, at __Morrilton, AR_____.

Kelli Lee, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Notice was served on Tim Hutchinson and Mallory Shamoon, attorneys for Defendant, via email on September 24, 2025.

Dated: September 24, 2025

Respectfully submitted,

Kelli Lee, Pro Se Plaintiff

905 W. Rock St.

Morrilton, AR, 72110

(501) 438-9330

kelli.j.lee@gmail.com

# EXHIBITS

Exhibits A through F are shown on the following pages

**<u>Exhibit A – Email from Plaintiff to Defendant's Counsel, dated September 11, 2025, approx. 7:43 AM ("Deposition")</u>**



Gmail                                          Kelli J. Lee <kelli.j.lee@gmail.com>

**deposition**

**Kelli J. Lee** <kelli.j.lee@gmail.com>                    Thu, Sep 11, 2025 at 7:43 AM
To: Timothy Chad Hutchinson <thutchinson@rmp.law>
Bcc: "Kelli J. Lee" <kelli.j.lee@gmail.com>

To:  Walmart Counsel,

Because of our verbal agreement before the court on August 19, 2025 to conduct my deposition on September 12, 2025 in Russellville, Arkansas; I am writing to inquire about the specific time and address.

As of this email, I have not received the required written notice for this deposition. If you are still planning to have the deposition on September 12, 2025, please advise by the end of this business day (09/11/2025) with the required notice stating the specific time and address of the deposition.  If I receive no response by the end of this day, I will assume that there will be no deposition.

Kelli J. Lee

Pro Se Plaintiff

Exhibit A – Page 1 of 1

**Exhibit B – Email from Defendant's Counsel to Plaintiff, dated September 11, 2025, 6:03 PM ("Re: Deposition")**



intended recipient, you are notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Thank you.

The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from our office to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or our computer of even some computer unconnected to either of us which the e-mail passed through. We are communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let us know at once.

**From:** Kelli J. Lee <kelli.j.lee@gmail.com>
**Sent:** Thursday, September 11, 2025 7:44 AM
**To:** Tim Hutchinson <thutchinson@rmp.law>
**Subject:** deposition

EXTERNAL EMAIL     Be careful with links and attachments!

To:  Walmart Counsel,

Because of our verbal agreement before the court on August 19, 2025 to conduct my deposition on September 12, 2025 in Russellville, Arkansas; I am writing to inquire about the specific time and address.

As of this email, I have not received the required written notice for this deposition. If you are still planning to have the deposition on September 12, 2025, please advise by the end of this business day (09/11/2025) with the required notice stating the specific time and address of the deposition.  If I receive no response by the end of this day, I will assume that there will be no deposition.

Kelli J. Lee

Pro Se Plaintiff

2 attachments



image001.png
11K

📄 25.0911 WM Kelli - Notice of Deposition Kelli Lee.pdf
178K

Exhibit B – Page 2 of 2

**Exhibit C – Copy of Deposition Notice attached to Email from Defendant's Counsel to Plaintiff, dated September 11, 2025, 6:03 PM ("Re: Deposition")**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KELLI LEE                                                                PLAINTIFF

v.                                  Case No. 5:24-cv-05190-TLB

WAL-MART STORES ARKANSAS, LLC                                            DEFENDANT

NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that counsel for the Defendant will take the following deposition upon

oral examination pursuant to the Federal Rules of Civil Procedure before a notary public or other

officer authorized by law to administer oaths:

| | |
|---|---|
| Deponent: | Kelli Lee |
| Date and Time: | September 12, 2025 at 9:00am CST |
| Location: | Courtyard by Marriott of Russellville 154 E Aspen Lane Russellville, AR 72802 |
| Means Recorded: | Stenograph |

Dated: September 11, 2025.

Respectfully Submitted,

By:    /s/ Tim Hutchinson
Timothy Hutchinson
RMP LLP
5519 Hackett Rd., Suite 300
Springdale, AR 72762
(479) 443-2705
thutchinson@rmp.law

*Attorneys for Plaintiffs*

Exhibit C – Page 1 of 1

**Exhibit D – Email from Plaintiff to Defendant's Counsel, dated August 26, 2025 ("Plaintiff's Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents – LEE v. WAL-MART STORES ARKANSAS, LLC – Case Number 5:24-CV-05190")**

 Gmail

Kelli J. Lee <kelli.j.lee@gmail.com>

**Plaintiff's Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents – LEE v. WAL-MART STORES ARKANSAS, LLC – Case Number 5:24-CV-05190**

1 message

**Kelli J. Lee** <kelli.j.lee@gmail.com>                                Tue, Aug 26, 2025 at 4:29 PM
To: Timothy Chad Hutchinson <thutchinson@rmp.law>, Mallory Shamoon <mshamoon@rmp.law>
Bcc: "Kelli J. Lee" <kelli.j.lee@gmail.com>

Date: Tuesday, August 26, 2025

Dear Counsel,

Please find attached Plaintiff's Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, served pursuant to the Federal Rules of Civil Procedure. These amended responses supersede any prior responses.

Thank you,

Kelli J. Lee

Pro Se Plaintiff

**Attachment:** Plaintiff_Amended_Responses_ to_Defendant_First_Set_of_Interrogatories_and_Requests_for_Production_of_Documents.pdf

**Case Number:** 5:24-CV-05190

**Case Name:** Lee v. Wal-Mart Stores Arkansas, LLC

Plaintiff_Amended_Responses_ to_Defendant_First_Set_of_Interrogatories_and_Requests_for_Production_of_Documents.pdf
964K

Exhibit D – Page 1 of 1

## Exhibit E – Notice of Service of Plaintiff's Amended Discovery Responses, dated August 26, 2025

Case 5:24-cv-05190-TLB-CDC     Document 30     Filed 08/26/25     Page 1 of 2 PageID #: 68

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KELLI LEE                                                          PLAINTIFF

v.                                    Case No.  5:24-CV-05190

WAL-MART STORES ARKANSAS, LLC                    DEFENDANT

### NOTICE OF SERVICE OF AMENDED DISCOVERY RESPONSES

Plaintiff, Kelli Lee, respectfully gives notice that on August 26, 2025, she served upon Defendant WAL-MART STORES ARKANSAS, LLC her Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents.

These amended responses are served pursuant to the Federal Rules of Civil Procedure and supersede any prior responses.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this Notice was served on Tim Hutchinson and Mallory Shamoon, attorneys for Defendant, via email on August 26, 2025.

Dated: August 26, 2025

Respectfully submitted,

Kelli Lee

Pro Se Plaintiff

Exhibit E – Page 1 of 2

905 W. Rock St.

Morrilton, AR, 72110

(501) 438-9330

kelli.j.lee@gmail.com

**<u>Exhibit F – Plaintiff's Amended Responses to
Defendant's First Set of Interrogatories and Requests for Production of
Documents</u>**

**Exhibit F** starts on the following page

Date:  Tuesday, August 26, 2025

Dear Counsel,

Please find below Plaintiff's Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, served pursuant to the Federal Rules of Civil Procedure. These amended responses supersede any prior responses.

Thank you,

Kelli J. Lee

Pro Se Plaintiff

---

**Plaintiff's Amended Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents**

**Note:** Plaintiff objects to any interrogatories or document requests that seek information beyond a reasonable timeframe as overly broad, unduly burdensome, and not proportional to the needs of this case. Unless otherwise stated, Plaintiff's responses are limited to the period beginning January 1, 2022. Plaintiff's employment with Defendant began in May 2022, and requests for information preceding this timeframe are not reasonably calculated to lead to the discovery of admissible evidence and are irrelevant to the claims and defenses in this matter.

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**KELLI LEE**                                                                                        **PLAINTIFF**

**WAL-MART STORES ARKANSAS, LLC**  **DEFENDANT**

## DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant Wal-Mart Stores Arkansas, LLC ("**Defendant**"), through its attorneys, RMP LLP, submits the following First Set of Interrogatories and Requests for Production of Documents to Plaintiff, Kelli Lee ("**Plaintiff**") to be answered in accordance with the Federal Rules of Civil Procedure.

### DEFINITIONS

The Defendant is providing the following definitions to avoid the need to include long descriptions within each separate request for production of documents and/or interrogatory. Because the Defendant's definitions "define" what is being requested, it is not proper to object to a definition. You may object to the request (as that request is defined by the Defendant), but not to the Defendant's defined terms. The following definitions shall apply to these Interrogatories and Requests:

1. "You" and "Your" shall refer to the Plaintiff, Kelli Lee.

2. "Defendant" shall refer to the Defendant, Wal-Mart Stores Arkansas, LLC or its parent company.

3. "Parties" or "Party" shall refer to all parties or any party named in this case. 4. "Complaint" shall mean the complaint you filed on September 12, 2024 or any subsequent complaint filed thereafter.

5. "Document" or "Documents" shall mean the original and all non-identical copies of any writing or record of any type or description

known, including, but not limited to, letters, statements, settlement statements, contracts, administrative and/or judicial claims, complaints, charges, pleadings and filings, phone message slips, telephone logs, medical charts and files, prescriptions, agreements, memoranda, messages, notes, worksheets, reports, forms, checkbooks, cancelled checks, inter-office and intra-office communications, calendars, drafts, transmittal authorizations and confirmations, bank statements, financial statements, work orders, invoices, lists, notebooks, computer printouts, electronically and magnetically recorded or stored data (including computer and work processor disks or tapes), notices, and all other written, printed, typed, photographs or graphically recorded matter of any kind or nature, however produced, reproduced, or preserved.

6. "Communication" is used in its customarily broad sense and includes, without limitation, oral and written communications, including all conversations, discussions, meetings, telephone conferences, text messages, letters, e-mails and other correspondence, memoranda, and all other oral, written or electronic forms of exchange.

7. "Identify," when used in reference to a person, means to state his or her name, their address, telephone number(s), and employer.

8. "Identify," when used in reference to a business or entity other than a natural person, means its name and the address and telephone number of its principal place of business.

9. "Identify," when used in reference to a communication, means to state the time and date of communication, the persons to whom were privy to or parties of the communication, the person(s) who overheard the communication, and the nature and substance of the communication.

10. The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these Requests all information that otherwise might be construed to be outside their scope.

All other words contained herein shall be interpreted broadly in light of how those words are customarily taken and understood in plain and

ordinary use.

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1**: For Plaintiff, please state the following:

(a) Complete name;

(b) Social Security number; and

(c) Date of birth.

(a) Kelli Janine Lee

(b) (c) Objection. The Social Security Number and Date of Birth of the Plaintiff is already available to the requesting party because the Plaintiff provided it to them while she was employed with them so it is irrelevant to provide it again here.  The plaintiff also objects to providing her Social Security number and Date of birth in unprotected discovery responses due to privacy concerns and potential misuse.  Subject to and without waiving the foregoing objections:  Plaintiff might be willing to provide this sensitive information under protective order; however, the Defendant already has this information in its possession Plaintiff reserves the right to supplement this response.

**INTERROGATORY NO. 2**: Identify by name, address, telephone number, and employer  all persons known or believed by You, Your attorneys, or other representatives, to possess  knowledge or information concerning the facts alleged in the Complaint and indicate the particular facts of which each person is or may be knowledgeable.

Plaintiff identifies the following individuals who are believed to have knowledge of the facts alleged in the Complaint:

Name: Walmart

Employer (if known): __Walmart_____

Address (if known): __Walmart in Bentonville AR_____

Phone (if known): _____

Type of Documents in Custody: __Employment Files, etc_____

Plaintiff identifies Ivory Lee as an individual with knowledge relevant to the allegations in the Complaint. This individual has personal knowledge of the emotional distress Plaintiff experienced and other circumstances surrounding her employment with Defendant. Plaintiff objects to providing the individual's personal address or contact information on the grounds of privacy and undue burden, particularly as the individual is not a party to this case. Plaintiff further objects to disclosing the individual's employer as it is not relevant to the claims or defenses in this matter.  Subject to and without waiving these objections, Plaintiff is willing to consider making this individual available for contact through counsel if and when it becomes reasonably necessary during discovery.

Besides the names above, Plaintiff (Kelli Janine Lee) also has knowledge of the events. Plaintiff reserves the right to supplement this response.

**INTERROGATORY NO. 3**: Identify by name, address, telephone number, and employer  all persons known or believed by You, Your attorneys, or other representatives, to possess or  maintain custody of any Document, communication or other demonstrative evidence relating to  the facts in this case.

Plaintiff identifies the following persons who may possess or maintain custody of documents, communications, or other evidence

relevant to this case:

Name: Walmart

Employer (if known): __Walmart_____

Address (if known): __Walmart in Bentonville AR_____

Phone (if known): _____

Type of Documents in Custody: __Employment Files, etc_____

Besides the named above, Plaintiff (Kelli Janine Lee) also possesses relevant documents and communications and will produce non-privileged responsive materials in accordance with the applicable rules. Plaintiff reserves the right to supplement this response.

**INTERROGATORY NO. 4**: Identify any and all fact witnesses whom You may call at the trial of this matter and with regard to each, please state the subject matter, the substance of the facts, and any opinions which the person is expected to testify.

Plaintiff has not yet made a final determination regarding which fact witnesses may be called to testify at trial. Plaintiff reserves the right to supplement or amend this response as discovery progresses and trial preparation continues.

**INTERROGATORY NO. 5**: Identify by name, address, telephone number, and employer, any and all expert witnesses whom You may call at the trial in this matter, including any expert witness You intend to use for rebuttal only. For each, please state:

(a) the facts and opinions to which the expert is expected to testify;

(b) a summary of the grounds for each opinion;

(c) the identity of all documents that have been provided to each expert or have been reviewed in connection with the expert's expected

testimony in this case;

(d) the identity of all reports, schedules, photographs, charts, diagrams, work papers,  and all other Documents that each expert witness has

    prepared or that have been  prepared for each expert witness in connection with this proceeding; and

(e) the identity of all communications each expert has had with any Party in this case.

    Plaintiff has not yet retained or identified any expert witnesses, including rebuttal experts, whom she definitively intends to call at trial. Plaintiff reserves the right to supplement or amend this response as discovery progresses and as decisions regarding expert testimony are made in preparation for trial.

**REQUEST FOR PRODUCTION NO. 1**: Please produce each and every Document,  communication, record, or any other evidence identified or responsive to Interrogatory No. 5.

    Plaintiff has not yet retained or identified any expert witnesses, including rebuttal experts, whom she definitively intends to call at trial. Plaintiff reserves the right to supplement or amend this response as discovery progresses and as decisions regarding expert testimony are made in preparation for trial.

**REQUEST FOR PRODUCTION NO. 2**: For each expert listed in Your response to  Interrogatory No. 5, please attached a copy of the expert's most recent curriculum vitae and state: (a) the date of any prior consultation as an expert;

(b) the purpose of the consultation;

(c) the expert's opinion expressed in said consultation; and

(d) provide the style of the case and case number for all cases in which any expert has given deposition or courtroom testimony.

Plaintiff has not yet retained or identified any expert witnesses, including rebuttal experts, whom she definitively intends to call at trial. Plaintiff reserves the right to supplement or amend this response as discovery progresses and as decisions regarding expert testimony are made in preparation for trial.

**INTERROGATORY NO. 6**: Excepting conversations with Your attorneys, please Identify by name, address, telephone number, and employer every person You or someone on Your behalf has interviewed, conferred or otherwise discussed with regarding the facts alleged in the Complaint and provide the date(s) or approximate date(s) of said discussion(s).

Plaintiff has discussed the subject matter of this lawsuit with representatives of the Defendant, members of her immediate family, support groups focused on employment discrimination, staff from the EEOC and the unemployment agency, and legal counsel. Plaintiff objects to identifying individuals by name at this time, as such disclosure would be unduly burdensome, intrusive, and not relevant to the claims or defenses in this action. Plaintiff further objects to the extent the request seeks privileged or confidential communications.

**REQUEST FOR PRODUCTION NO. 3**: In connection with Your responses to Interrogatory No. 6, produce each Document which reflects, supports, or tends to support Your response, and the name, address and job title of the person who has care, custody or control of said documents.

Plaintiff is willing to produce non-privileged documents in her possession, custody, or control that relate to the discriminatory conduct alleged in this case. To the extent this request seeks materials that are not reasonably accessible or would be unduly burdensome to collect, Plaintiff objects. Plaintiff will supplement this response as appropriate if additional relevant information becomes available

during the course of discovery.

**INTERROGATORY NO. 7**: Excepting Your attorneys, please Identify by name, address and telephone number any person or entity who has taken a written or recorded statement from You about the matters described in the Complaint.

Plaintiff objects to this request to the extent it seeks privileged or confidential communications, including any involving legal counsel or legal strategy. Subject to and without waiving that objection, Plaintiff states that she provided a statement regarding the discriminatory and harassing conduct to representatives of the Defendant. Plaintiff is not aware of any other non-privileged written or recorded statements about the matters described in the Complaint that were made to any person or entity other than her attorneys, the Defendant, and relevant government agencies (e.g., EEOC). Plaintiff reserves the right to supplement this response if any additional information becomes known through the course of discovery.

**REQUEST FOR PRODUCTION NO. 4**: In connection with Your response to Interrogatory No. 7, produce each Document which reflects, supports, or tends to support Your response, and the name and address of the person who has care, custody or control of said documents.

Plaintiff objects to this request to the extent it seeks privileged or confidential documents, including communications with legal counsel. Subject to and without waiving that objection, Plaintiff states that she will produce, or has already produced, non-privileged documents in her possession, custody, or control that reflect, support, or tend to support her response to Interrogatory No. 7 if they are not already in the Defendants possession. To the extent the Defendant already possesses copies of Plaintiff's complaint to the Defendant or her EEOC charge of discrimination, Plaintiff is not required to reproduce these documents. Plaintiff will not produce documents that are already in Defendant's possession unless specifically requested in a way that requires additional clarification. Plaintiff reserves the right to supplement this response if additional information becomes available during the course of discovery.

**INTERROGATORY NO. 8**: Identify by date or approximate date each statement against interest, written or oral, communicated by a Walmart employee which You have knowledge of and the name of the maker of said statement.

Plaintiff objects to this interrogatory on the grounds that it is overly broad and vague. Plaintiff is aware of statements and actions by Walmart employees that support the allegations of discrimination, harassment, and unlawful termination in this case. To the extent such statements have been made, Plaintiff has already disclosed them or will continue to disclose them in accordance with the discovery process. Plaintiff reserves the right to supplement this response if additional relevant information becomes available during discovery.

**REQUEST FOR PRODUCTION NO. 5**: Produce every Document, communication, record, or any other evidence referenced or identified in the immediately preceding Interrogatory.

Plaintiff objects to this request on the grounds that it is overly broad and vague. Plaintiff will produce documents, communications, records, or any other evidence that supports or reflects statements or actions identified in response to Interrogatory No. 8. Plaintiff has already disclosed or will continue to disclose any such documents in accordance with the discovery process. Plaintiff reserves the right to supplement this response if additional relevant information becomes available during discovery.

**REQUEST FOR PRODUCTION NO. 6**: Produce and Identify every Document, communication, record, or any other evidence which You intend to offer into evidence at the trial of this case.

Plaintiff objects to this request on the grounds that it is premature and may compel Plaintiff to disclose documents or evidence that may not be used at trial. Plaintiff will produce documents, communications, records, or any other evidence that Plaintiff intends to

offer into evidence at trial, as determined in accordance with the applicable rules of procedure. Plaintiff reserves the right to supplement this response and exclude documents or evidence as decisions about trial presentation evolve during the course of discovery and trial preparation.

**REQUEST FOR PRODUCTION NO. 7**: Produce and Identify every Document, communication, record, or any other evidence that, to Your knowledge, concerns or might concern this dispute, regardless of whether You intend to offer it into evidence at the trial of this case.

Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome, as it seeks documents, communications, records, or evidence that may have no relevance to this case or that may not be necessary for trial. Plaintiff will produce documents, communications, records, or evidence that are relevant to the claims or defenses in this case, consistent with the applicable rules of procedure. Plaintiff reserves the right to supplement this response as additional information is identified or becomes available during the course of discovery.

**REQUEST FOR PRODUCTION NO. 8**: Please produce any audio or video recording of a Walmart employee that is in Your possession.

Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome to the extent it seeks all audio or video recordings of Walmart employees without limitation as to time, subject matter, or relevance. Without waiving said objections, Plaintiff will produce any readily accessible, non-privileged recordings currently in her possession that are relevant to the claims in this case. Plaintiff reserves the right to supplement this response as additional relevant information or recordings are identified during the course of discovery.

**INTERROGATORY NO. 9**: Other than what You have already provided in response to the previous requests, please state whether You or Your attorneys know of the existence of any Documents, writings, computer-generated or computer-stored data, or items of real

evidence that have any relevance to any fact at issue in this case. If so, please Identify each such item and provide:

(a) A complete description of the item;

(b) The name and address of the present custodian of each such item; and (c) An explanation of how and why each such item is relevant to any such fact.

Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense nor proportional to the needs of the case. Plaintiff further objects to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, Plaintiff will identify and produce non-privileged documents or evidence that are relevant and responsive, as required by the applicable discovery rules. Plaintiff reserves the right to supplement this response as discovery progresses.

**INTERROGATORY NO. 10**: Please state whether You have ever been named in or a party to a lawsuit, complaint, claim or other cause of action in a court of law, dispute resolution program or administrative proceeding and, if so, provide the venue, caption and case number (or other identifying information), along with the outcome for each.

Plaintiff has not been named in, nor has she been a party to, any lawsuit, complaint, claim, or other cause of action in any court of law, dispute resolution program, or administrative proceeding, other than the present case.

**INTERROGATORY NO. 11**: Please provide a listing of Your work history for the last ten (10) years. In so doing, please Identify the full name of Your employer, the employer's address and phone number, the dates You were employed by each employer, the position[s] held with each

employer, Your work schedule for each position held with each employer, and the reason that each employment ended.

**INTERROGATORY NO. 11 Response:**

Plaintiff objects to this interrogatory to the extent that it seeks information that is overly broad and not relevant to the claims or defenses in this case. Without waiving that objection, Plaintiff states the following:

**Most recent employer**: Walmart Global Tech, Bentonville, Arkansas. Phone number unknown.

**Dates of employment**: May 2022 – September 1, 2023.

**Position**: Software Engineer III.

**Work schedule**: Full-time, 40+ hours per week, primarily daytime hours.

**Reason for separation**: Plaintiff was unlawfully terminated, as alleged in the Complaint.

**Previous work**: Self-employed as owner/operator of Ligohi Software LLC.

**Business address**: 905 West Rock Street, Morrilton, Arkansas.

**Work schedule**: Varies depending on workload and client demand.

**Employment dates**: Plaintiff does not recall a formal end date for this self-employment, as it has been an intermittent or side activity, not a full-time position.

**Reason for ending**: N/A.

Plaintiff reserves the right to supplement this response as needed.

**INTERROGATORY NO. 12**: Please Identify with specificity the damages You are seeking in this lawsuit.

Restitution of what I would have received had the discrimination, harassment, retaliation and unlawful termination not happened.  In particular this is:

1.  I want the falsified disciplinary actions removed from my record at Walmart as those discriminatory and inaccurate write ups can deter other managers within Walmart and elsewhere from hiring me in the future because they never should have been created in the first place.

2.  I would like to be rehired and promoted. Had the discrimination never occurred by this time it would have been reasonable for me to have already received at least one promotion at Walmart and perhaps more than one because my first manager told me that after 1 year to 1.5 years it is time for a promotion.  I had a good work record (productive worker with no PTO days) at Walmart prior to the discrimination, harassment, retaliation and unlawful termination.  Also by this time I would have been at Walmart for about 3 or more years had the discrimination and unlawful termination not occurred.  I was hired in May 2022 and it is now 2025 as of the last revision of this section of this document by the Plaintiff.

3.  I want back pay for any lost wages, stock and other benefits that I missed out on because of the unlawful termination

4.  In addition, I want Walmart to agree not to take any similar adverse actions against me in the future such as wrongful termination, wrongful disciplinary actions, refusal to promote within a reasonable period of time because of what I have already suffered from them in the past.

5.  I would like reimbursement for legal fees that I have paid or any other expense I have incurred involving this case with Walmart.

6.  I would like Walmart to agree that I can be a remote worker.  Prior to the unlawful termination I moved away from my home, and relocated to Bentonville, AR as required by Walmart for my job as a Software Engineer III.  After I lost my job because of the unlawful termination, I had to relocate again out of Bentonville and I was injured during the relocation process.  To compensate me for this and the other trouble caused by this matter, I would like to be a remote worker so I will not have to move again.

7.  I would like any other compensation for any other monetary sums and damages that I am entitled to.

If these terms are not met I would be open to settling for eight million dollars ($8,000,000) plus all legal fees to address both the

financial and non-financial impacts.

**REQUEST FOR PRODUCTION NO. 9**: Produce every Document, communication, record, or any other evidence referenced or identified in the immediately preceding Interrogatory.

Plaintiff responds that the damages sought in this case include restitution of what she would have received had the discrimination, harassment, retaliation, and unlawful termination not occurred, including but not limited to: back pay, stock, and other benefits; removal of false disciplinary actions; reinstatement and promotion; reimbursement of legal and related expenses; and assurances of future non-retaliation. Plaintiff has already produced, or the Defendant already has in its possession, documents relevant to this Interrogatory, including pay records and W-2 forms from Plaintiff's prior employment with Walmart. Plaintiff further objects to producing any additional documents that are not in her possession or that are equally accessible to the Defendant. Plaintiff will supplement this production if additional responsive, non-privileged materials become available.

**REQUEST FOR PRODUCTION NO. 10**: If You are alleging economic damages, please provide Your complete annual federal income tax returns for the years 2020-2024.

Plaintiff objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff's complete federal income tax returns contain sensitive personal and financial information that are irrelevant to the claims or defenses in this action. Relevant income and compensation information is already in Defendant's possession, including W-2 forms, direct deposit records, and internal payroll data.

Plaintiff reserves the right to supplement this response with additional documentation, if necessary, during the course of discovery.

**REQUEST FOR PRODUCTION NO. 11**: Please provide a copy of a paystub issued to You by the Defendant.

Plaintiff objects to this request on the grounds that it is duplicative and not proportional to the needs of the case. Plaintiff was paid by

direct deposit, and no paper paystubs were ever provided. Pay information was made available exclusively through Walmart's internal electronic system, to which Plaintiff no longer has access. Defendant, as the issuer of these electronic paystubs, is in the best position to retrieve them. Plaintiff reserves the right to supplement this response if any responsive documents are located in the future.

**INTERROGATORY NO. 13**: Please Identify each and every employer whom You have made contact with since January 1, 2023 regarding the possibility of future employment. For each such employer, please Identify the full name of the employer, the position[s] You inquired about, the date[s] of any such inquiry, the dates of any communications with any employer regarding the potential of future employment, the name of any person You communicated with regarding the potential of future employment, and describe the outcome of any discussions regarding future employment.

Plaintiff objects to this request on the grounds that it is overly burdensome, time-consuming, and disproportionate to the needs of this case. Plaintiff has applied to over 1,000 job openings across more than 100 employers since her termination. Requiring Plaintiff to identify each application, the specific dates, contact persons, and communication history would be unduly burdensome and excessive, particularly given the large volume of applications and the repetitive nature of the data. Such extensive detail is also not reasonably calculated to lead to the discovery of admissible evidence and is not necessary to assess Plaintiff's efforts to mitigate damages. Subject to and without waiving the foregoing objections, Plaintiff provides the following representative sample of her job search efforts. This summary is intended to demonstrate Plaintiff's good faith and consistent efforts to secure comparable employment:

**Job Application Summary Sample**

*Representative list of the 100+ employers applied to since September 1, 2023. Note: The list below is a representative sample of Plaintiff's job search efforts and does not reflect every position applied for. Plaintiff has submitted over 1000 applications across various platforms and job*

| Employer Name | Position(s) Applied For | Approx. Timeframe | Application Method / Notes |
|---|---|---|---|
| *Meta (Facebook)* | *Positions related to Software Engineering* | *Multiple times between Sep 1, 2023 and now* | *Meta Careers website* |
| *Salesforce* | *Positions related to Software Engineering* | *Multiple times between Sep 1, 2023 and now* | *Company site & tech job boards* |
| *Amazon* | *Positions related to Software Engineering* | *Multiple times between Sep 1, 2023 and now* | *Amazon.jobs* |
| *Positions related to Software Engineering* | *Positions related to Software Engineering* | *Multiple times between Sep 1, 2023 and now* | *Online application* |
| *Tech Startups* | *Various technical roles* | *Multiple times between Sep 1, 2023 and now* | *Job Boards and LinkedIn outreach* |

**INTERROGATORY NO. 14**: Please state whether You received treatment for any mental  or emotional health including but not limited to counseling, therapy, or medical treatment in the  past ten (10) years. No If so, for each such provider of said services, please provide full name, physical  and mailing address, date of service, and phone number.

**INTERROGATORY NO. 15:** Please Identify every medication prescribed for You  during the last ten (10) years. None since 01/01/2022. Please Identify the prescribed medication, the prescribing physician,  the date[s] of any prescription, and the pharmacy that filled the prescription.

Respectfully Submitted,

WAL-MART STORES ARKANSAS, LLC

By:  _/s/ *Tim Hutchinson*_____

Tim Hutchinson (AR2000030)

RMP LLP

P.O. Box 1788

Fayetteville, AR 72702

P: (479) 443-2705

F: (479) 443-1788

thutchinson@rmp.law

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I, Timothy Hutchinson, hereby certify that on this 25th day of April 2025, I have served a  true and correct copy of the foregoing on the following individual, via Email.

Chris Burks

Stewart Whaley

1 Riverfront Place, Ste. 745

North Little Rock, AR 72114

chris@wh.law

stewart@wh.law

*/s/ Tim Hutchinson*_____

# Plaintiff Provided Timeline with Other Supporting Evidence and Documents Related to Her Case

**How to use the following chart:** This timeline lists a series of events in chronological order that are relevant to my case.  Most events on this timeline have a date, description, and link.  Please read the descriptions for each event on the timeline and then click on its link to see the supporting evidence for that event. (Links will open in a separate web window and you will need to return to this document to view it again or  move forward) Evidence includes emails, messages, recordings, pictures, etc. Some links may take a few seconds to load.  Links are provided to access the evidence directly from the timeline below because this provides access to the evidence in the format that the plaintiff ordinarily maintains it.

|   | Date | Description | Link to Evidence |
|---|---|---|---|
| 1 | May  23, 2022 | I started my first day at Walmart as a Software Engineer III | Linked_May_2023_Evidence |
| 2 | June 27, 2022 | Awarded Cultural Champion Award at Walmart by my first Manager on June 27, 2022 | Linked_June_27_2023_Evidence |
| 3 | January 31, 2023 | Shreyas Lele Joins the Data Platform Team as a New Product Owner/manager on approximately **January 31, 2023** | Linked_January_31_2023_Evidence |
| 4 | February 11, 2023 | Justin is Assigned as my Manager on **February 11, 2023** | Linked_February_11_2023_Evidence |
| 5 | February 15, 2023 | On **February 15, 2023**, four days after being assigned as my manager, Justin stripped me of my admin rights to the Data Platform/Guide Toggle Walmart workplace group | Linked_February_15_2023_Evidence |

| 6 | February 23, 2023 | I successfully presented my engineering work at Walmart to the CAB Board and received all leadership approvals for my work in this recording made on February 23, 2023. This was needed to make changes in the production environment.  This was one of the many times that I presented my successful software engineering work publicly at Walmart. | Linked_February_23_2023_Evidence |
|---|---|---|---|
| 7 | February 24, 2023 | On **February 24, 2023**, approximately two weeks after becoming my manager, Justin commented negatively about my job performance in Workday. One of my previous managers had already submitted information for my performance review before Justin updated it. Justin made negative comments about my character and work performance and posted these comments on my successfully rated performance review | Linked_February_24_2023_Evidence |
| 8 | May 3, 2023 | **May 3, 2023**, I ask Gaurav (the Team Tech Lead/Trainer), by e-mail to include Mel Happi, who was a female member of management for my team (the Data Platform Team) in the May 4, 2023 meeting that he has called me to with himself and Shreyas. When I saw that Gaurav had called a meeting with only himself, Shreyas, and me I realized that the meeting was gender unbalanced and race unbalanced as both Gaurav and Shreyas are Indian men. So I requested that Mel, a female manager for the Data Platform team come to the meeting to give the meeting more gender balance. I also requested that Justin come to the meeting. After I invited Mel to the meeting, Gaurav blocked Mel from coming to the meeting. | Linked_May_3_2023_Evidence |

| 9 | May 4, 2023<br><br>(This email is part of an email chain starting on May 4.<br><br>Original Email:<br>A:Linked_May_4_2023_Evidence<br><br>Email Replies in the Chain:<br>May_31_2023_Evidence<br>June_5_2023_Evidence<br>June_5_2023_Evidence | On **May 4, 2023**, I made a complaint to Justin Kohley, my manager, that Gaurav Khowde, Team Tech Lead/Trainer) was displaying a bias toward me because he was rarely if ever reviewing my PR work while freely reviewing the PR work of my teammates. Because Gaurav was the team tech lead, he had leadership responsibilities for all of the engineers on the team. (I was a minority on the team because I was an American software engineer working on the team.  This is because most of the members of my team including the managers for the team were from the country India and were male. ) | A:_Linked_May_4_2023_Evidence |
| 10 | May 4, 2023 | Gaurav requested that I attend a gender unbalanced meeting that he invited me to where I was the only female in attendance.  This meeting occurred on **May 4, 2023**.  At this meeting, I was unfairly criticized by Gaurav, Shreyas, and Justin about a CAB presentation that I presented. However, since neither Gaurav, Shreyas, or Justin attended my CAB presentation, they were not qualified to criticize it. The previous day, May 3, I asked Gaurav to include a female manager for the Data Platform team for this meeting to give it a better gender balance but Gaurav ignored my request and blocked the female manager from attending the meeting. He also refused to tell me what the meeting was about prior to my coming. In the meeting he and Shreyas falsely pretended that they were freely available to assist me and all that I needed to do was ask. In fact on May 17, I asked Gaurav for assistance and he refused. Please see the corresponding link for more evidence about the meeting. | B:_Linked_May_4_2023_Evidence |

| 11 | May 12, 2023 | On **May 12, 2023** in a chat message I told Shreyas that he was harassing me and treating me differently than my teammates. | Linked_May_12_2023_Evidence |
|---|---|---|---|
| 12 | May 16, 2023 | **May 16, 2023**, I worked with my teammate Prakhar on assignment ADEDT-987 on May 16, 2023 in this Zoom meeting. This was one of the multiple times that I collaborated with Prakhar on work. Later, Justin, my manager, will falsely claim in the disciplinary action(s) that he assigned me that I refused to work with my teammates on my assignments. | Linked_May_16_2023_Evidence |
| 13 | May 17, 2023 | **May 17, 2023**, Gaurav Khodwe, Team Tech Lead refused to work with me when I asked him. In the disciplinary action(s) that Justin falsified, Justin will accuse me of not working with Gaurav on my assignments, when actually Gaurav refused to work with me. Gaurav, declined to meet with me on May 17 after I repeatedly rescheduled a 1:1 meeting with him that was about work. 1:1 meetings were a time where I could ask him questions and get training with my Data Platform work assignments as Gaurav was the team Tech Lead and it was his responsibility to lead the team and assist with training. He also asked for the 1:1 connect meeting that I scheduled to be put off for about a month until mid June. This meant that, Gaurav, the Tech Lead was practically unavailable to meet with me to work with me during the time that I was working on the new job assignment ADEDT-987. Because Tech Lead Gaurav declined to meet with me from May 17 – June 15, I wasn't able to work with Gaurav during the time that I needed it. This occurred four days after I told Shreyas that he was harassing me in a chat that Gaurav | Linked_May_17_2023_Evidence |

| # | Date | Description | Evidence |
|---|---|---|---|
| | | could view on Microsoft Teams. However, in the May 4, 2023 recorded meeting, Gaurav, told me that he was available to assist me and that all that I had to do was ask. I asked Gaurav here to work with me and he said no. | |
| 14 | **May 18, 2023** | I successfully presented my engineering work at Walmart to the CAB Board and received their approval for my work on May 18, 2023. This was needed to make changes in the production environment.  This was one of the many times that I presented my successful software engineering work publicly at Walmart and I am including it here as an example of my work quality. | Linked_May_18_2023_Evidence |
| 15 | May 22, 2023 | **May 22, 2023**, A Zoom meeting that I attended with my teammates Prakhar and Huize where the Digital Twin UI was discussed. During this time I was learning the new Digital Twin-UI Procedure(s) and they had both already done work in this area, so I attended this meeting to learn from them and assist them how I could. In the Disciplinary Action(s) that Justin falsified and placed on my permanent Walmart record, Justin inaccurately claims that I wasn't open to working with my teammates | Linked_May_22_2023_Evidence |
| 16 | May 23, 2023 | On **May, 23,2023**, I reported that Shreyas was harassing me to Justin. Later, Justin would retaliate against me for reporting Shreyas. | Linked_May_23_2023_Evidence |
| 17 | May, 29, 2023 | On **May 29, 2023**, I reached out to Naina, my female teammate, to work with me on assignment ADEDT-987 before she left Walmart.  I did this because we were all teammates and we were expected to work together on work and oftentimes we had to ask our engineering teammates to review our work before our work could | Linked_May_29_2023_Evidence |

| | | | |
|---|---|---|---|
| | | officially be considered complete by Walmart. My ADEDT-987 assignment concerned building something new on top of something that Naina had already worked on, so I met with her to learn about what she knew about the code that I would be building my work on top of because it was important for me to know this in order to integrate my code into the overall Digital Twin UI team project that we were working on. Justin will falsely claim in the disciplinary action(s) later that I refused to work with my teammates on my assignments. | |
| 18 | May 31, 2023 | **May 31, 2023**, I became the only female engineer on the Data Platform Team after Naina, the only other female engineer, left to pursue other opportunities outside of Walmart. The engineers that remained on the team where Gaurav, Darshen, Kelli, Huize, Oluwaleke, Prakar | A:_Linked_May_31_2023_Evidence |
| 19 | May 31, 2023 | On **May 31, 2023**, Justin calls me to a meeting. The main topic of the meeting is that I was asked by Gaurav, Shreyas and Justin to provide timelines on tasks where I knew an honest timeline could not be given. I explained to my manager (Justin) that I had a religious conflict with providing dishonest information. I explained that I could not give an honest timeline so giving a dishonest timeline was a religious conflict for me. I also told them that I was unsure of the timeline and that I would get the work done asap. On June 19, 2023, Justin penalized me for not providing a timeline and making complaints of harassment and discrimination with a yellow disciplinary action which he falsified. (Recording available) During this meeting Justin told me that he was going to start joining some of the Data Platform team meetings. | B:_Linked_May_31_2023_Evidence |

| | | | |
|---|---|---|---|
| 20 | May 31, 2023<br><br>Email chain starting on May 31 4:58 PM:<br>Original Email: C:_Linked_May_31_2023_Evidence<br>Email Replies in the Chain:<br>B:_Linked_June_5_2023_Evidence | After the meeting on **May 31, 2023**, Justin sends out an e-mail misquoting what I said during the May 31, 2023 meeting that he called me to and says that his inaccurate version of events is what happened in the meeting. | C:_Linked_May_31_2023_Evidence |
| 21 | May 31, 2023 | On **May 31, 2023**, Justin inaccurately claims by e-mail that Gaurav is doing a great job at reviewing my PR work. On May 4, 2023, I made a complaint to Justin, my manager, that Gaurav was rarely if ever reviewing my PR work but he was reviewing my other teammates work. This meant that whenever I needed a PR work approval, I would have to rely on my other teammates instead. Since Gaurav was the Team Tech Lead, it was his responsibility. After I made a complaint to Justin and Justin talked to Gaurav. Later, Gaurav asked me if he could do a PR review for me for ADEDT-987. I agreed and he left a lot of PR visible review comments on my work but never approved my PR work. Justin will later falsely claim that the PR work that I did for ADEDT-987, which Gaurav reviewed was not good, and use this as an excuse to file disciplinary action(s) against me which I believe is in retaliation for me standing up against, and reporting bias, harassment and discrimination from Gaurav, Justin, and Shreyas | D:_Linked_May_31_2023_Evidence |
| 22 | June 1, 2023 | On **June 1, 2023**, I met with Huize Wang through a Zoom meeting to work on ADEDT-987 because he had prior experience with the new Digital Twin UI and I asked him questions about the Digital Twin UI procedure. Justin inaccurately claimed in the falsified disciplinary action(s) that I was not open to working | A:_Linked_June_1_2023_Evidence |

| | | with my teammates on my assignments. Justin also inaccurately claims in the falsified disciplinary actions(s) that Digital Twin UI work like ADEDT-1061 and ADEDT-987 should take 2-3 days for an experienced engineer and no more than 7 days for an inexperienced engineer. However on page 4 of this document you can see an image of an assignment that Huize worked on for the new Digital Twin UI where it took him 49 days to complete the assignment (ADEDT-730) although not all of his work has taken that long. Huize was not separated from his job on the Data Platform team as I was for not completing an assignment within 7 days by Justin, his manager and he was still working at Walmart at the time that I was terminated. | |
|---|---|---|---|
| 23 | June 1, 2023 | On **June 1, 2023,** I tell the Data Platform team that I will be recording a team meeting. | B:_Linked_June_1_2023_Evidence |
| 24 | June 1, 2023 | On **June 1, 2023**. In a Team chat message that I sent to Justin, I told him that I will get ADEDT-987 completed as soon as possible, that I am unsure about the time, and I informed him that I have a religious conflict with providing dishonest information. | C1:_Linked_June_1_2023_Evidence  C2:_This_Link_Gives_Info_About_My_Sincerely_Held_Religious_Beliefs |
| 25 | June 2, 2023 | **June 2, 2023** Justin schedules a meeting to speak with me for June 2, 2023 from 10:30 AM - 11:00 AM Central Time | A:_Linked_June_2_2023_Evidence |
| 26 | June 2, 2023 10:26 AM | On Friday, **June 2, 2023 10:26 AM**: I informed Justin that I would be recording 1:1 meetings moving forward to prevent being misquoted | B:_Linked_June_2_2023_Evidence |

| # | Date | Description | Evidence |
|---|------|-------------|----------|
| 27 | June 2, 2023, 11:31 AM<br><br>Email chain starting on June 2, 2023, 11:31 AM<br>Original Email:<br>C:_Linked_June_2_2023_Evidence<br><br>Email Replies in this Chain:<br>D:_Linked_June_2_2023_Evidence<br>Linked_June_6_2023_Evidence<br>A:_Linked_June_7_2023_Evidence<br>B:_Linked_June_7_2023_Evidence<br>B:_Linked_June_8_2023_Evidence<br>C:_Linked_June_8_2023_Evidence<br>D:_Linked_June_8_2023_Evidence<br>Linked_June_14_2023_Evidence<br>Linked_June_16_2023_Evidence | On **June 2, 2023, 11:31 AM** After the meeting Justin sends me an e-mail asking me for a work update by the end of the day, etc | C:_Linked_June_2_2023_Evidence |
| 28 | June 2, 2023, 2023, 3:59 PM | On **June 2, 2023, 2023, 3:59 PM** I sent Justin a work update email by the end of the day as he had requested. However in the falsified disciplinary action(s) Justin will inaccurately claim that I refused to provide any progress updates and status about my work | D:_Linked_June_2_2023_Evidence |
| 29 | June 5, 2023 | On **June 5, 2023** I informed the team that I would be recording regularly scheduled required team meetings | A:_Linked_June_5_2023_Evidence |
| 30 | June 5, 2023 | **June 5, 2023.** I reply to Justin's e-mail where he has misquoted me in the May 31, 2023 meeting and I explain that I have a religious conflict with providing dishonest information, etc | B:_Linked_June_5_2023_Evidence |
| 31 | June 5, 2023 | **June 5, 2023,** I reply to Justin's false claim that Gaurav is doing a great job reviewing my PR work, I also state that Justin is displaying a bias toward me and that Gaurav has not reviewed my PR's/work as much as my teammates as of this day, etc | C:_Linked_June_5_2023_Evidence |

| | | | |
|---|---|---|---|
| 32 | June 5, 2023 | **June 5, 2023**, Justin replies to my e-mail and continues to falsely insist that Gaurav is doing a great job reviewing my PR work | D:_Linked_June_5_2023_Evidence |
| 33 | June 6, 2023 | **June 6, 2023**, Justin replies to one of my email's and acknowledges that I have sent him a progress update, etc However, in the falsified disciplinary action(s) Justin will inaccurately claim that I refused to provide any progress updates and status about my work | Linked_June_6_2023_Evidence |
| 34 | June 7, 2023 | **June 7, 2023**, I reply to Justin by email and give a work status update about my work for ADEDT-987. I mention that his recent increase in criticism after I filed a complaint of harassment looks suspicious in this e-mail. I also attached the copies of the assignments for ADEDT-987 and ADEDT-1061 so that Justin could see what each assignment asked for. However in the falsified disciplinary action(s) Justin will inaccurately claim that I didn't provide any progress updates and status about my work | A:_Linked_June_7_2023_Evidence |
| 35 | June 7, 2023 | **June 7, 2023**, Justin replies to my email. In this e-mail he makes untrue claims. For example he suggests that I am not working with the team, however, by this time I had worked with Prakhar, Huize, and corresponded with Naina by chat message about my work before she left Walmart. Gaurav had refused to work with me although he would speak to me publicly and sometimes answer messages. Justin also criticized my work unfairly again. June 8, 2023, I replied to Justin's e-mail. I mention that the negative statements that he is making about me and | B:_Linked_June_7_2023_Evidence |

| | | | |
|---|---|---|---|
| | | my work are inaccurate. I copy my work status update about my work so that he can be best informed about my situation and ask him to read it with an open mind. Near the end of my e-mail, I again mention that his recent increase in criticism after I have complained about harassment looks suspicious. In the falsified disciplinary action(s) Justin will inaccurately claim that I didn't provide any progress updates and status about my work. | |
| 36 | June 8, 2023 | **June 8, 2023**, I met with my teammate Prakhar in a Zoom meeting and collaborated with him about the new Digital Twin UI procedure for completing assignments. However, Justin has inaccurately claimed in the falsified disciplinary action(s) that I was not open to collaborating with my teammates on work. | A:_Linked_June_8_2023_Evidence |
| 37 | June 8, 2023 | **June 8, 2023**, I replied to Justin's e-mail. I mention that the negative statements that he is making about me and my work are inaccurate. I copy my status update about my work so that he can be best informed about my situation and ask him to read it with an open mind. Near the end of my email, I again mention that his recent increase in criticism after I have complained about harassment looks suspicious.  I provided another work update here by email, yet Justin will inaccurately claim in the disciplinary action(s) that I didn't provide any work updates. | B:_Linked_June_8_2023_Evidence |

| 38 | June 8, 2023 | **June 8, 2023**, Justin replies to my email, dismisses my professional opinion and updates about my work and tells me that he is scheduling a connect meeting with me | C:_Linked_June_8_2023_Evidence |
|---|---|---|---|
| 39 | June 8, 2023 | **June 8, 2023**, I reply to Justin's email and agree to attend the meeting and I say that the meeting is part of his continued harassment that is getting in the way of me doing my work | D:_Linked_June_8_2023_Evidence |
| 40 | June 14, 2023 | **June 14, 2023**, Justin sends me another email criticizing my work and it contains inaccurate information about me and expresses bias. He also asks for more work that was not asked for in the original assignment, makes false claims about the PR comments that Huize left, and asks for the new work to be completed within two days which did not give me enough time to learn how to do the work, do the work, and find someone who would agree to review and approve it | Linked_June_14_2023_Evidence |
| 41 | Friday, June 16, 2023 | **Friday, June 16, 2023** – I respond to Justin's email. I give a progress work update in the email about ADEDT-987, I say that the work that I was originally asked to complete is probably already complete. I pointed out the inaccurate statements that he had accused me of, I told him that he was discriminating and harassing me and that my other teammates were not being treated the same way, etc (Note: most of my team took a PTO break during the time that I was working) | Linked_June_16_2023_Evidence |

| 42 | Monday, June 19, 2023 | On **Monday, June 19, 2023**, **(Juneteenth)** Justin elected to issue a yellow disciplinary action against me, an African American woman. The yellow disciplinary action notice contained incorrect information about me and my work which is contributing to the defamation of my character. Justin also tried to blackmail me by telling me that unless I sent him a statement that he called an action plan which would acknowledge the yellow disciplinary action as true/reasonable he would file more disciplinary actions against me. As he had falsified the Yellow Disciplinary Action, it was not reasonable for me to endorse his inaccurate statements about me, so I did not send him the endorsing statement that he had requested. This Disciplinary action directly followed weeks of me telling Justin that I had experienced harassment, discrimination, and/or bias from himself as well as two managing members of the Data Platform team.  Those managing members were Shreyas and Gaurav. Below I have included a link to the falsified yellow disciplinary action that Justin placed on my permanent Walmart record. | Link_to_Falsified_Yellow Disciplinary_Action |
|---|---|---|---|
| 43 | Monday, June 19, 2023<br><br>Email chain starting on Monday, June 19, 2023, 4:59 PM<br><br>Original Email:<br>A:_Linked_June_19_2023_Evidence<br><br>Email Replies in this Chain:<br>A:_Linked_June_19_2023_Evidence<br>Linked_June_20_2023_Evidence<br>A:_Linked_June_23_2023_Evidence<br>A:_Linked_June_26_2023_Evidence<br>B:_Linked_June_26_2023_Evidence | **June 19, 2023**, **(Juneteenth)** Justin sends me an e-mail after the disciplinary action meeting in which he accuses me of leaving the disciplinary action meeting, however, he leaves out a lot of information about his actions before I left the meeting that caused me to leave the meeting. He also does not acknowledge that he falsified the yellow disciplinary action with inaccurate information about me and my work, he also says that the disciplinary action that he falsified identifies areas in which I can improve and requests that I send him an | A:_Linked_June_19_2023_Evidence |

| | | | |
|---|---|---|---|
| | C: Linked_June_26_2023_Evidence<br>B: Linked_June_27_2023_Evidence | action plan about how I will improve my performance, etc | |
| 44 | Monday, June 19, 2023 | **June 19, 2023**, After the Disciplinary Action, I obtained a reviewer who agreed to approve my work so that I could submit the work that I had completed for ADEDT-987 which allowed me to mark the assignment as completed/resolved. That reviewer was Huize | B: Linked_June_19_2023_Evidence |
| 45 | June 20, 2023 | **June 20, 2023**, I respond to Justin's email that he sent on June 19, 2023 and tell him that I need time to think | Linked_June_20_2023_Evidence |
| 46 | June 22, 2023 | **June 22, 2023**, I sent a zoom meeting request to my teammates Huize and Gaurav(Team Tech Lead), to meet with me to work on ADEDT-1061. Huize came to my meeting and we collaborated on the work for about 30 minutes. Gaurav did not come to my meeting. After the meeting Huize reached out to me through a chat message on Microsoft Teams and sent me some information via chat that he said came from Gaurav. However, Justin has inaccurately claimed in the falsified disciplinary action(s) that I was not open to collaborating with my teammates and the Team Tech Lead,Gaurav, on work. | Linked_June_22_2023_Evidence |
| 47 | June 23, 2023 | **Friday, June 23, 2023**, After falsifying one disciplinary action against me, Justin sends an e-mail threatening me with another disciplinary action, etc | A: Linked_June_23_2023_Evidence |
| 48 | June 23, 2023 | **Friday, June 23, 2023**, I met with my teammate Prakhar in a Zoom meeting and collaborated with him about the new Digital Twin UI procedure for completing assignment ADEDT-1061. However, Justin | B: Linked_June_23_2023_Evidence |

| | | | |
|---|---|---|---|
| | | has inaccurately claimed in the falsified disciplinary action(s) that I was not open to collaborating with my teammates on work. | |
| 49 | Monday, June 26, 2023, 6:44 AM | **Monday, June 26, 2023, 6:44 AM**, I respond to Justin's email where he is asking for my response to the falsified disciplinary action and I tell him that the disciplinary action contains inaccurate information, that he has made requests of me that are against my religion, that he discriminated against me by filing the yellow disciplinary action, etc | A: Linked_June_26_2023_Evidence |
| 50 | Monday, June 26, 2023, 6:48 AM | **Monday, June 26, 2023, 6:48 AM**, I respond to Justin's email of June 19, 2023 (Juneteenth)where he emailed me after the disciplinary action meeting and accused me of leaving the disciplinary action meeting, however, he left out a lot of information about his actions before I left the meeting that caused me to leave the meeting. In my response e-mail, I reminded Justin that I had told him before arriving at the meeting that I would have to record it in order to participate as Justin had misquoted me in the past. I also told him that I felt uncomfortable because he had called a 1:1 meeting with me, invited someone else to the meeting, did not tell me what the meeting was about in advance, and entered in incorrect information into a disciplinary action that he filed against me that has contributed to the defamation of my character, I also stated that after both Justin and the other meeting attendee who he had invited both said that they objected to being recorded during the meeting, I left the meeting. | B: Linked_June_26_2023_Evidence |
| 51 | Monday, June 26, 2023 | **Monday, June 26, 2023**, Justin tries to blackmail me into writing an action plan that will endorse the inaccurate | C: Linked_June_26_2023_Evidence |

| | | statements that he has written about me in the falsified Yellow Disciplinary Action as true. He threatens me by saying he will file more disciplinary actions against me if I don't comply with his demands | |
|---|---|---|---|
| 52 | Tuesday, June 27, 2023 | **Tuesday, June 27, 2023**, I invited my teammate Prakhar to a Zoom meeting and we collaborated about the new Digital Twin UI procedure for completing assignment ADEDT-1061 for the API portion of the work. However, Justin has inaccurately claimed in the falsified disciplinary action(s) that he has placed on my permanent Walmart work record that I was not open to collaborating with my teammates on work. | A:_Linked_June_27_2023_Evidence |
| 53 | June 27, 2023 | **June 27, 2023** – I Attempted to resolve the issue within Walmart by filing a complaint with Walmart about Justin unfairly assigning me a Yellow Disciplinary Action and also reporting some of the other incidents of harassment and discrimination through the Walmart Open Door program. I filed case(s) through this program disputing the Yellow Disciplinary Action, reporting the harassment and discrimination and or bias that I had faced from Justin, Shreyas, and Gaurav. I also asked Walmart to remove the Disciplinary Action from my record and stop Justin from taking more adverse actions against my work record | B:_Linked_June_27_2023_Evidence |
| 54 | June 27, 2023 or June 28, 2023 | **June 27, 2023 or June 28, 2023** – Justin organizes the departmental team building event and sends it out to our entire department. He uses everyone else's Walmart Work email address or the Walmart Digital Campus Distribution | Linked_Evidence |

| | | | |
|---|---|---|---|
| | | List to send their email message but he chooses to use my personal g-mail in a way that is visible to everyone who receives an invitation to the team building event. By singling me out and using my personal gmail instead of my Walmart Work email, it insinuated to a large group of people that I don't work for Walmart, and sent me and everyone else a public message that my career at Walmart was on thin ice. Here Justin discriminated against me by singling me out and using my personal email address of kelli.j.lee@gmail.com instead of my Walmart Work e-mail which was kelli.lee@walmart.com

(Here I was harassed, bullied and publicly shamed by my manager) | |
| 55 | June 28, 2023 | **June 28, 2023**, Shreyas Lele, Manager/Product Owner for the team blocks me from working on two assignment cards that would have simplified my work. I requested that Mel, the Technical Project Manager for our team, create the assignments that would break the work that I was required to do down in pieces so that it could be completed quicker. One card was to give the group transparency about the research that I would need to do to learn the new UI procedure and the other assignment card was for adding the accessibility work that would be needed. Being able to complete those assignments would have given me more time to complete the research and learn the new UI procedure for this work before being asked to turn work in. Mel agreed to my request and she created each assignment for me. However, Shreyas, was unwilling to work with me and he sent me Justin, Gaurav, Mel a message saying that he was closing those assignments and that I was expected to just do the work as part of my current assignments. This did the following 1) It didn't give me enough time to learn the procedure on the work 2) It also made it look like I wasn't working on as many tasks as I | Linked_June_28_2023_Evidence |

| | | actually was because I wasn't getting credit for the work that he closed. | |
|---|---|---|---|
| 56 | July 4, 2023 | **July 4, 2023**, I needed to learn a new procedure on the new Digital Twin UI to complete ADEDT-1061, so I called my teammate Prakhar to a Zoom meeting for help. I asked Prakhar because he had prior experience with the new Digital Twin UI. Prakhar came to the meeting and I asked him questions about the Digital Twin UI procedure. Some of Prakar's work surrounding the new Digital Twin UI has taken several weeks to complete. However, in the falsified disciplinary action(s), Justin inaccurately claims that Digital Twin UI work like ADEDT-1061 and ADEDT-987 should take 2-3 days for an experienced engineer and no more than 7 days for an inexperienced engineer. Justin also inaccurately claimed in the falsified disciplinary action(s) that I was not open to working with my teammates which was also untrue as proven in the evidence here | Linked_July_4_2023_Evidence |
| 57 | July 6, 2023 | **July 6, 2023**, I spoke with a member of the Walmart Open door team by phone for about an hour to dispute the falsified yellow disciplinary action that Justin had filed. I also reported the harassment and discrimination that I had faced from Justin, Shreyas, and Gaurav. The member of the Open Door Team requested Sara Pollard, Justin's Manager, to set up a meeting with me so I could report my concerns to her. I was also instructed to reach back out to the representative from open door if I didn't hear from Sara by the middle of the following week to report my concerns to her. Sara Pollard was also Shreyas Lele's Manager. | A:_Linked_July_6_2023_Evidence |
| 58 | July 6, 2023 | **July 6, 2023**. Discrimination by Shreyas Lele during a Data Platform team meeting. The names on this day were as | B:_Linked_July_6_2023_Evidence |

| # | Date | Description | Evidence |
|---|---|---|---|
| | | follows: Darshan, Gaurav, Huize, Kelli, Luis, Oluwaleke and Prakhar. All engineers were present in the online meeting except for Darshan, who would have been first if he were present. Since no one had work to demo first, Shreyas, the Product Owner, for the Data Platform team started calling the engineers to give work progress updates in alphabetical order from left to right. Each update had the potential to generate side discussions between those present on the call. Gaurav gave the first update since Darshan was not present, then Huize was called as his name came next. Then instead of calling my name next after Huize as Kelli would have come next in the alphabetical listing, Shreyas moved to the last name on the board and started working his way backward by calling the engineers in reverse alphabetical order. So instead of calling me he called Prakhar, and then he called Leke, and then he called Luis, the intern, and then he finally called me (Kelli) last after everyone else had given their work updates. Shreyas called the only female engineer on the team last after the men and he also called engineers with less seniority and experience before he called my name. | |
| 59 | July 11, 2023 | **July 11, 2023**, I noticed that the Walmart Open Door Program had closed my case disputing the falsified yellow disciplinary action and I hadn't heard from Sara to report my concerns to her, so I left voicemail(s) for the open door program representative and sent an e-mail asking for them to reopen my case because I had not heard from Sara to report my concerns. | A:_Linked_July_11_2023_Evidence |
| 60 | July 11, 2023 | **July 11, 2023**, I was contacted by Sara Pollard about my open door concern and she scheduled a meeting to address my open door concern for Thursday, July 13 from 10:30 AM-11:00 AM. | B:_Linked_July_11_2023_Evidence |

| 61 | July 13, 2023 at approximately 10:30 AM-11:30AM | **On July 13, 2023** at approximately 10:30 AM-11:30AM, I presented my open-door concerns to Sara Pollard giving her a document that showed evidence that: 1.) the yellow disciplinary action filed against me had been falsified, 2.) that I had faced harassment and discrimination on my job, and 3.) I asked her to remove the yellow disciplinary action from my record and to assign me a new manager other than Justin or Shreyas. I also told her that if changing Justin from being my manager meant moving to another team I didn't mind as long as the position that I would be moving to would be a Software Engineer III or higher. | A:_Linked_July_13_2023_Evidence |
|---|---|---|---|
| 62 | July 13, 2023 | **July 13, 2023** –Justin cancels a regularly scheduled biweekly 1:1 online Teams meeting that he had created to manage me and sent me a message saying that he will reschedule the meeting for early next week. This occurred on the same day that I submitted an open door concern to Sara Pollard about Justin unfairly filing the Yellow Disciplinary Action against me and I asked her to take action to remedy it on my behalf. I believe that Sara told Justin that I was disputing the Disciplinary action that he had unfairly assigned me and that he had decided to reschedule our online meeting to an in person meeting as I believe that it is a rule that if you want to take formal action against someone you have to meet them in person. This suggests retaliation by Justin because I used the Walmart open door process to report his actions | B:_Linked_July_13_2023_Evidence |
| 63 | Friday, July 14, 2023 at 12:44PM | **Friday, July 14, 2023 at 12:44PM**, I received an invitation to join an online zoom meeting from Sara Pollard stating that she had reached a decision about my open door concern. You can confirm the time that Sara sent the meeting to me by viewing the image in the link and seeing that the Open door decision meeting was sent on Friday 7/14/2023 at 12:44 PM | A:_Linked_July_14_2023_Evidence |

| | | in the image. Please increase the zoom to 200% if necessary to view this text in the image | |
|---|---|---|---|
| **64** | Friday, July 14, 2023 at 12:46PM<br><br><br>**Email chain starting on** Friday, July 14, 2023 at 12:46PM<br><br>**Original Email or Message:**<br>B:_Linked_July_14_2023_Evidence<br><br>Email Replies in this Chain:<br>A:_Linked_July_17_2023_Evidence | **Friday, July 14, 2023 at 12:46PM**, Two minutes after I receive a notice from Sara Pollard stating that she had made a decision on my open door case, Justin Kohley sent me an invitation to join him for a meeting scheduled for Monday, 17, 2023 in the morning in a blind office.  The purpose of Justin's meeting was to fire/separate me from my job on the Data Platform Team. Monday, July 17, 2023 was the next business day<br>after the Friday, July 14 meeting that Sara Pollard had invited me to where she would tell me her decision about my open door concern that I had reported concerning Justin, Shreyas, and Gaurav. I believe that Sara and Justin were both in communication at this time and I believe that Justin retaliated against me by separating me from my job for the following reasons 1) asking his manager Sara Pollard to remove the falsified Yellow Disciplinary Action that he had unfairly assigned me from my Walmart Work Record, 2) reporting him to Walmart open door for harassment and discrimination, and 3) asking that he no longer be my manager. (You can confirm the time that Justin sent the meeting request to me by viewing the image in the link and seeing that Justin's meeting was sent on Friday 7/14/2023 at 12:46 PM in the image. Please increase the zoom to 200% if necessary to view this text in the image) | B:_Linked_July_14_2023_Evidence<br><br><br><br>: |
| **65** | Friday, July 14, 2023, 2:15 PM - 2:30 PM | **Friday, July 14, 2023, 2:15 PM - 2:30 PM**, I attended the open door decision meeting that Sara Pollard called me to. In the meeting Sara Pollard told me that she was going to uphold the yellow disciplinary action and stated that Justin would remain my manager, etc. | C:_Linked_July_14_2023_Evidence |

| 66 | Friday, July 14, 2023 | **Friday, July 14, 2023**, I sent my teammate Huize a message and arranged a Zoom meeting for Tuesday, July 18, 2023 at 11:00AM to collaborate on the best ways to complete the ADEDT-1061 assignment. However, Justin has inaccurately claimed in the falsified disciplinary action(s) that he has placed on my permanent Walmart work record that I was not open to collaborating with my teammates on work. | D:_Linked_July_14_2023_Evidence |
|---|---|---|---|
| 67 | Friday, July 14, 2023 | **Friday, July 14, 2023**, I sent my teammate Prakhar a message to arrange a Zoom meeting to collaborate on the work for ADEDT-1061. However, Justin has inaccurately claimed in the falsified disciplinary action(s) that he has placed on my permanent Walmart work record that I was not open to collaborating with my teammates on work. | E:_Linked_July_14_2023_Evidence |
| 68 | Monday, July 17, 2023 – around 7:00 AM | **Monday, July 17, 2023 – around 7:00 AM** in the morning By then I had realized that the conference room that Justin reserved for his meeting with me for Monday, July 17, 2023, between 9:30 to 10:30 am was a blind conference room whereas most of the conference rooms that I have noticed at Global People Center have glass walls and doors. Also the room was away from most foot traffic making it unsafe for me especially after the harassment and discrimination that I have faced from Justin. Well before the meeting was to take place, I sent Justin an email insisting that we meet in a safer location, and I received no response to that email. During the time that the meeting was scheduled, I went to the hallway outside the blind room and insisted that he come out and meet in an open space which he reluctantly did. In the falsified Orange Disciplinary Action, Justin will unreasonably criticize me for not meeting with him in his blind office | A:_Linked_July_17_2023_Evidence |

| 69 | Monday, July 17, 2023, between 9:30 AM to 10:30 AM | **Monday, July 17, 2023, between 9:30 AM to 10:30 AM**, On the next business day after speaking with Sara Pollard and receiving her open door decision concerning disputing the falsified yellow disciplinary action that I had received from Justin and reporting harassment and discrimination from, Justin, Shreyas, and Gaurav, Justin retaliated and told me that I was being separated from my job on the Data Platform Team and requested that I leave the building where I worked (Walmart Global People Center) and not return to that building or any of the Walmart buildings. He also said that I was being placed on a job search to find a job within Walmart or elsewhere and that if I didn't find a job within Walmart in 45 days (by Sept 1, 2023) I would be terminated. I requested that Justin put the job separation in writing. Justin sent me an email stating the terms of my job separation before I left the building. I read his email detailing my job separation and then I left the building (Walmart Global People Center) where I had been working. When I left it was still in the morning on July 17, 2023, at approximately 10:30 AM. | B:_Linked_July_14_2023_Evidence |
| 70 | Monday, July 17, 2023 | I sent my teammates Huize and Prakhar messages canceling my meetings with them to work on ADEDT-1061 and wishing them both the best of luck | |
| 71 | Monday, July 17, 2023, 12:19 PM | **Monday, July 17, 2023, 12:19 PM**, Justin removes me from the Data Platform Team chat. Justin inaccurately claimed in the falsified disciplinary action(s) that I was unwilling to work with the team, however, Justin was the one who was unwilling for me to work with the Data Platform Team | C:_Linked_July_14_2023_Evidence |
| 72 | July 17, 2023 8:55/9:55 PM | **Later that night at about 8:55/9:55 PM on July 17, 2023,** Justin created a falsified Orange Disciplinary Action which | The Falsified Orange Disciplinary Action |

| # | Date | Description | Evidence |
|---|------|-------------|----------|
| | | was inconsistent with the email that he had sent me early in the morning on July 17, 2023, at approximately 10:00 AM. His email said that if I continued in good standing with the company, I would be eligible for rehire. The Orange Disciplinary Action also contained inaccurate information about me and my work (as did the previous Yellow Disciplinary Action notice) It also criticized me for not endorsing the inaccurate information about me in the first Yellow Disciplinary Action notice. Justin did not tell me that he planned to assign an Orange Disciplinary Action to me when he met with me in the morning on July 17, 2023. However, in the Orange Disciplinary Action notice Justin inaccurately claimed that he had discussed the Orange Disciplinary Action with me in the morning on July 17 during my separation call meeting. The Orange Disciplinary Action did not receive official approval from a Walmart representative until July 18, 2023, which was well after I had been separated from my job and left the building on the morning of July 17, 2023. The two disciplinary actions that Justin falsified against me are visible on my permanent Walmart employment record and can deter other managers within Walmart or others from hiring me. | Evidence that Justin created the Falsified Orange Disciplinary action at approximately 8:55/9:55PM on July 17, 2023 after I left in the morning on July 17, 2023, at approximately 10:30 AM |
| 73 | July 24, 2023 | After I was separated from my job on the Data Platform Team the assignment ADEDT-1061 that I was working on was cloned/copied and an identical assignment to it was given to my male Indian teammate Prakhar. His identical assignment was called ADEDT-1194. Because Prakhar had already collaborated with me on my identical assignment he already had a head start in completing his work. He officially started work on | Linked_July_24_2023_Evidence |

|  |  |  |  |
|---|---|---|---|
|  |  | ADEDT-1194 on July 24, 2023. He completed his work on August 16, 2023. This means that Prakhar officially took 23 days to complete his work. Prakhar was still working on the team as of 8/19/23 while I was separated from my job and told that I didn't meet the team standard of 2-3 days to complete my work in the falsified disciplinary action(s) that Justin placed on my permanent Walmart record. Justin discriminated against me, the only African American and female engineer on the Data Platform team, by not treating me the same as my male teammates and applying a work standard to me that was not applied to everyone else and he used this discriminatory standard to help separate me from my job on the Data Platform Team. This discriminatory act was just one of many others that I faced while working on the team |  |
| 74 | September 1, 2023 | I was terminated from Walmart employment on **September 1, 2023**. Justin's email in the morning on July 17, 2023, stated that I had 45 days (until September 1, 2023) to find another job within Walmart or I would be terminated from Walmart employment. But the falsified Disciplinary Action(s) that he has placed on my permanent Walmart record can deter other managers within Walmart or elsewhere from hiring me |  |

# Other Evidence

| Description | Linked Evidence |
|---|---|
| Summary of Discrimination and harassment events that I faced on my job as a Software Engineer III at Walmart Global Tech | Summary__Linked_Evidence |
| My Right to Sue Letter from the EEOC | Right_to_Sue_From_EEOC__Linked_Evidence |
| Over 30 pages of supporting evidence and images showing me working with my teammates and/or people on related teams at Walmart. | My_Teamwork_and_Collaboration__Linked_Evidence |
| Assignments that I worked on from May 1 to July 17 | May_through_July_Assignments__Linked_Evidence |
| I have included over 30 assignments in this link where the male engineers on the Data Platform team have taken at least two weeks or more to complete their Data Platform work. All of these male engineers are still working on the team as of 8/19/23 while I was separated from my job and told that I didn't meet the team standard of 2-3 days to complete my work in the disciplinary action(s) that Justin falsified against me. Justin discriminated against me by not treating me the same as my male teammates and applying a work standard to me that was not applied to everyone else and he used this discriminatory standard to separate me from my job. | Male_Teammates_Work__Linked_Evidence |
| Proof that I completed ADEDT-987 assignment | ADEDT_987__Linked_Evidence |

| | |
|---|---|
| EEOC Charge | EEOC_Charge___Linked_Evidence |
| Positive Residential References Contradicting Defendant's Characterization | Linked_Evidence_of_Positive_Character |
| EEOC Position Statement | Position_Statement__Linked_Evidence |
| EEOC Rebuttal to Position Statement - Walmart's position statement contains a lot of false information, and it was therefore necessary for me to file the linked rebuttal to their position statement with the EEOC | Rebuttal_to_Position_Statement__Linked_Evidence |
| EEOC Supplemental Information | Supplemental_Information__Linked_Evidence |
| It appears that my position as a Software Engineer III on the Data Platform team has been filled by an Indian male by the name of Shubhang Shah who started work shortly after I was officially terminated. The team was already predominantly Indian and male. | Shubhang_Shah___Linked_Evidence |
| The following are my initial thoughts about what I would really like to be part of a settlement agreement if one occurs for my case.  I am open to discussion about this list. | Possible_Settlement_Suggestions_Linked_Evidence |

Walmart Global Discrimination & Harassment Prevention Policy          Walmart Disciplinary Action Policy Information

**Data Platform Team between May 30, 2023 - July 17, 2023**

| Name | Role | Seniority | Ethnicity |
|---|---|---|---|
| Shreyas Lele | Manager/Product Owner | Joined January 2023 | Indian |
| Gaurav Khowde | Software Engineer IV/Team Tech Lead | Was working on the team before I joined | Indian |
| Lukeshini Reddy | Manager (I think she is a Technical Project Manager) | Joined the team a little before July 17, 2023 | Indian |
| Mel Happi | Technical Project Manager | Joined about January 2023. I think that Shreyas said that Mel would be leaving the Data Platform Team | African American |
| Naina Dhanwani | Software Engineer IV | She left Walmart on May 31, 2023 to pursue opportunities outside of Walmart…was on the team before I joined | Indian |
| Prakhar Mehdrotra | Software Engineer III | Was working on the team before I joined | Indian |
| Darshan Umashankar | Software Engineer III | Was working on the team before I joined | Indian |
| Kelli Lee | Software Engineer III | I joined in May 2022 | African American |
| Huize Wang | Software Engineer III | Joined December 2022 | Appeared to be Chinese |
| Oluwaleke Odewuyi | Software Engineer II | Joined October 2022 | African |
| Luiz Hernandez | Intern | Joined the team a little before July 17, 2023 and will probably leave the team in Fall 2023 when school starts | Not sure of his Ethnicity |