**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**KELLI LEE**                                                                                      **PLAINTIFF**


**v.**                                              **Case No.  5:24-CV-05190**


**WAL-MART STORES ARKANSAS, LLC**                                    **DEFENDANT**


**BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DOC. 55) PURSUANT TO FED. R. CIV. P. 72(a) AND MOTION TO STAY PENDING DISTRICT COURT REVIEW**


**I. PRELIMINARY STATEMENT**

Plaintiff Kelli Lee, proceeding pro se, respectfully submits this Brief in support of her Objections to Magistrate Judge Comstock's May 13, 2026 Order (Doc. 55) and in support of her Motion to Stay the June 30, 2026 deposition deadline pending District Court review. Pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), Plaintiff requests that District Judge David Fowlkes set aside Doc. 55 as clearly erroneous and contrary to law.

Doc. 55 states that Plaintiff  "either does not understand her obligations under the Federal Rules of Civil Procedure or is refusing to participate in her deposition for some other reason." (Doc. 55 at 1.) Neither premise is supported by the record. The official deposition transcripts — which this Court can and should review — directly contradict the characterizations made by Defendant's counsel that formed the basis for the Order. The Order was issued in reliance on material misrepresentations and must be set aside.

Plaintiff has participated actively and extensively in this litigation for nearly a year as a pro se

litigant following the withdrawal of her former counsel on July 17, 2025. She has appeared for two depositions, served verified amended and supplemental discovery responses on multiple occasions, produced over 100 labeled exhibits including 11 audio recording exhibits, filed numerous court documents, traveled over 800 miles at her own expense, and continued litigating this case under significant financial hardship following her termination from Walmart. These are not the actions of someone who does not understand her obligations or who is refusing to participate. **(See Plaintiff's Exhibit 1 - 526 attached to this filing for a comprehensive, dated itemized list of actions Plaintiff has taken to move her case forward, including court filings, mailings, emails, phone calls, miles traveled, expenses, depositions attended, and settlement conferences attended.)**

Doc. 55 should be set aside for three independent reasons: (1) it is based on findings directly contradicted by the official transcripts; (2) it orders a third deposition without the required showing of good cause, in violation of Rule 30(d)(1)'s seven-hour limit; and (3) it fails to address Defendant's pattern of improper questioning that produced the very disputes the Order attributes solely to Plaintiff. **(The September 12, 2025 and December 17, 2025 deposition transcripts and errata sheets are filed as Exhibit 6 of Docket Entry 47, Plaintiff's Response in Opposition to Walmart Inc.'s Motion to Dismiss, January 16, 2026.)**

## II. STATEMENT OF FACTS

### A. Plaintiff's Extensive Participation in This Litigation

Since assuming pro se status on July 17, 2025, Plaintiff has taken the following documented steps (**Plaintiff's Exhibit 1-526** ) and more in this litigation:

- Appeared for two full depositions: September 12, 2025 (approximately 9:00 a.m.

to 3:00–4:00 p.m., Russellville, Arkansas) and December 17, 2025 (9:30 a.m. to 12:43 p.m. (at which time defendant's counsel stopped the deposition), Fayetteville, Arkansas);

- Personally prepared and served Verified Amended Discovery Responses on August 26, 2025, and Verified Supplemental Discovery Responses on October 6, 2025, comprising 101 labeled exhibits and 11 audio recordings;

- Sent verified discovery responses to Defendant's counsel at least four times, including via email on December 31, 2025 (New Year's Eve);

- Filed over 100 exhibits with the Court as part of Docket Entry 41 (November 18, 2025), directly refuting Defendant's claims that materials were withheld;

- Emailed the Court approximately 28 times and called the Court at least 13 times in active case management;

- Sent approximately 22 emails to defense counsel to fulfill her discovery obligations and to move the case forward;

- Mailed signed and notarized deposition transcripts to the court reporter with tracking confirmation;

- Completed errata sheets for both depositions, signed and notarized;

- Filed a Notice to Clarify the Record Regarding Disputed Document Compilations on January 5, 2026, identifying specific alterations in Defendant's Exhibit 3;

- Traveled over 600 miles at her own expense for depositions demanded by Defendant including the related court proceedings that resulted from them, including approximately 50 miles round trip for the first deposition in Russellville, AR, approximately 280 miles round trip to attend a court hearing in

Page 3 of 20 – Plaintiff's Brief

Fayetteville related to the first deposition, and approximately 280 miles round trip for the second deposition in Fayetteville — depositions that Defendant demanded, not depositions initiated by Plaintiff — all while Defendant's counsel was located near the Fayetteville courthouse.

- Attended in person court proceedings, traveling hundreds of miles for each;

- Emailed the court reporter on December 25, 2025, to correct the court reporter's omission of an errata sheet of the December 17, 2025, deposition;

- Filed an Emergency Motion (Docket #26, August 11, 2025) when Defendant improperly noticed her deposition scheduled during the court-ordered abeyance period.

All of this was accomplished without legal counsel, without income that replaced the income that Plaintiff lost as a result of her unlawful termination from Walmart, and while bearing the full financial and physical burden of this litigation. The time devoted to these filings directly reduced the time available for Plaintiff's job search efforts as it sometimes consumed most of Plaintiff's day dealing with litigating this case, compounding the financial harm she has already suffered because of the defendant's conduct.

**B. The First Deposition — September 12, 2025**

The first deposition began at 9:00 a.m. on September 12, 2025. Defendant's own September 22, 2025, court filing characterized this session as "a nearly seven-hour deposition." The session was marked from early on by argumentative, repetitive, and compound questioning by Defense Counsel. Defense counsel narrated Plaintiff's response time on the record in a manner designed to intimidate rather than elicit testimony:

*COUNSEL: For the record, we've sat here for minutes on these two questions. Just silence. I'll restate the question yet again for the third time. Ms. Lee, do you have any independent recollection, and by that I mean not referencing notes — do you have any independent recollection of the events surrounding your employment at Walmart?*

*(Sept. 12, 2025 Deposition Transcript, page 77, lines 18–23.)*

*MS. LEE: Since the events occurred over two years ago and under the stress of a deposition, having notes and being able to make sure that my answers are accurate and that I'm not guessing, it helps me to refer to notes to make sure that I'm giving clear, accurate and honest answers.*

*(Sept. 12, 2025 Deposition Transcript page 77, lines 24–25; page 78, lines 1–3.)*

The deposition caused Plaintiff significant physical and emotional distress. As the session progressed, Plaintiff became overwhelmed, broke down in tears, and stepped outside to regain composure. Following the deposition, Plaintiff sought medical care. Her physician documented that the litigation, and in particular the nature of the deposition, were contributing to health issues for Plaintiff.

## C. Plaintiff's On-Record Medical Accommodation Statement — December 17, 2025

At the outset of the second deposition on December 17, 2025, before any substantive questioning began, Plaintiff placed a formal statement on the record:

*MS. LEE: I want to place a statement on the record regarding a necessary procedural accommodation for a documented medical condition... To ensure I can*

*provide accurate and complete testimony, I'm asserting my right to the following reasonable medical accommodations... I reserve the right to request a short additional break following any period of intense or overly argumentative questioning to manage my condition.*

*(Dec. 17, 2025 Deposition Transcript, page 5, lines 8–20)*

The May 13 Order does not acknowledge this accommodation request, does not address whether Defendant's questioning complied with it, and does not impose any accommodations for any future deposition.

**D. Defendant's Exhibit 3 and Plaintiff's Responses**

A substantial portion of the second deposition centered on Defendant's Exhibit 3 — a document compilation that Plaintiff disputed throughout as not reflecting her original submissions. Before questions about Exhibit 3 even began, defense counsel used the threat of summoning Magistrate Judge Comstock as a pressure tactic:

*COUNSEL: ...your refusal to answer certain questions would necessitate me obtaining guidance from Judge Comstock. Do you understand that's why we're here?*

*(Dec. 17, 2025 Transcript, page 6, lines 24–25; page 7, lines 1–2)*

*COUNSEL: Okay. Well, let's take our first break and we'll get Judge Comstock in here.*

*(Dec. 17, 2025 Transcript at page 7, lines 21–22.)*

Despite this pressure, Plaintiff answered the Exhibit 3 questions clearly and repeatedly. Her

answers were: (1) that the document mischaracterized the evidence; (2) that it had an improper foundation; (3) that it was not what she submitted; and (4) that Defendant should consult her verified amended and supplemental discovery responses for what she actually submitted. The relevant exchange is reproduced below:

> **COUNSEL**: *Well, the question is, do you recognize Exhibit 3? Can you identify Exhibit 3?*
>
> **MS. LEE**: *Okay. For this question, objection. This question mischaracterizes the evidence and has an improper foundation. I don't accept what's implied by this question, and looking at Exhibit 3, this is not what I submitted and I would refer you to either my amended or supplemental discovery responses.*
>
> **COUNSEL**: *Ms. Lee, the question is, do you recognize Exhibit 3? Can you identify it? I don't need you to tell me what it's not. Do you recognize Exhibit 3?*
>
> **MS. LEE**: *This question has already been asked and answered and I stand by what I said previously, and part of that is this question has an improper foundation. I objected to it, and this is not what I submitted and I would refer you to what I did submit, which is my amended and supplemental discovery responses.*
>
> **(Dec. 17, 2025 Deposition Transcript, pages 10–11.)**

Counsel's instruction that Plaintiff should not tell him "what it's not" is, in effect, a demand that she abandon a truthful answer and substitute the answer Defendant preferred. The Federal Rules do not permit this.

**E. Defense Counsel's Misrepresentations to Magistrate Judge Comstock**

When Defendant's counsel was unable to obtain Plaintiff's adoption of Exhibit 3, he halted the deposition and summoned Magistrate Judge Comstock. (Dec. 17, 2025 Transcript, p. 14, ll. 23–25; p. 15, ll. 1–3.) Before the Magistrate Judge, counsel stated:

> **MR. HUTCHINSON**: . . . *She refused to answer if she could recognize or identify Exhibit 3, refused to answer whether Exhibit 3 was prepared for submission to the EEOC, refused to answer if she prepared, organized, or drafted any part of Exhibit 3, and refused to answer whether the documents contained in Exhibit 3 are valid and authentic.*
>
> *(Dec. 17, 2025 Deposition Transcript, page 16, lines 24–25; page 17, lines 1–5.)*

This representation was false. As shown in Section D above and in the table in Section III.A below, Plaintiff had answered each of these questions. She stated, repeatedly and on the record, that the document was not what she submitted and directed counsel to her verified responses — a substantive answer. When given the opportunity to respond before the Magistrate Judge, Plaintiff explained this directly. (Dec. 17, 2025 Deposition Transcript, page 17, lines 9–18.)

Magistrate Judge Comstock then stated:

> **JUDGE COMSTOCK**: *Well, I don't — I disagree with you. I don't believe that the court reporter and Mr. Hutchinson would be saying that you weren't answering if you were making an answer, and you've told me yourself that you responded asked and answered several times.*
>
> *(Dec. 17, 2025 Deposition Transcript, page 25, lines 15–19.)*

In making this finding, Magistrate Judge Comstock credited defense counsel's characterization

over the actual transcript record and over Plaintiff's explanation given in real time. The official transcript demonstrates that Plaintiff did answer. This crediting of opposing counsel's misrepresentation over the documentary record infected the May 13, 2026 Order and renders it clearly erroneous.

## F. Defendant — Not Plaintiff — Stopped the Second Deposition

The May 13 Order suggests Plaintiff failed to participate. The transcript refutes this. It was Defendant's counsel who moved to end the December 17, 2025 deposition:

> **MR. HUTCHINSON**: *Yes, Your Honor. I would move that this deposition be stayed until the Court rules on my previously filed motion, which is motion for sanctions.*
>
> *(Dec. 17, 2025 Deposition Transcript, page 39, lines 16–18.)*

Plaintiff remained present and willing to testify. Defendant made the strategic choice to terminate the deposition and pursue sanctions rather than continue taking testimony. That strategic choice is not evidence of Plaintiff's refusal to participate.

## G. Defendant's Misrepresentation of Deposition Duration

Defense counsel asserted during the December 17, 2025 session that Plaintiff had been deposed "over a period of about 12 to 13 hours, between two days." (Dec. 17, 2025 Deposition Transcript, page 39, line 20.) The actual record contradicts this. Defendant's own September 22, 2025 filing characterized the first deposition as "nearly seven hours." The second deposition ran from 9:30 a.m. to 12:43 p.m. — approximately three hours and thirteen minutes. The actual combined total falls materially short of 12–13 hours.

**H. Defendant's Misrepresentation Regarding Audio Production**

During the second deposition, defense counsel inaccurately represented to Magistrate Judge Comstock that Plaintiff's verified responses did not provide any audio. (Dec. 17, 2025 Deposition Transcript, page 23, lines 9–10.) This is false. Plaintiff's court-filed Docket Entry 41 (November 18, 2025) includes Priority Exhibits 0.3a and 0.3b — a compilation of 11 audio recordings already produced to Walmart, with content summaries and access links, all part of her verified responses.

**I. The May 13, 2026 Order**

On May 13, 2026, Magistrate Judge Comstock issued Doc. 55, appointing standby counsel and ordering a third deposition no later than June 30, 2026. The Order found that Plaintiff "either does not understand her obligations under the Federal Rules of Civil Procedure or is refusing to participate in her deposition for some other reason." (Doc. 55 at 1.) The Order did not admonish Defendant for any conduct, did not address Defendant's pattern of improper questioning, and did not impose any protective conditions for the ordered deposition, or take Plaintiff's health conditions into account. **(See Plaintiff's Exhibit 3 - 526 — examples of Walmart Defense Counsel's improper conduct at depositions, including improper questions directed at Plaintiff — harassing, argumentative, compound, and repetitive — with supporting transcript excerpts.)**

Although Doc. 57 (May 18, 2026) relieved standby counsel after Plaintiff invoked her statutory right to self-representation under 28 U.S.C. § 1654 **(See Exhibit 2 - 526)**, the deposition requirement of Doc. 55 and its characterization of Plaintiff remain in effect. The June 30, 2026, deadline continues to run.

### III. ARGUMENT

#### A. Standard of Review

Under Federal Rule of Civil Procedure 72(a), a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." An order is clearly erroneous when, after reviewing all the evidence, the Court is left with a definite and firm conviction that a mistake has been made. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.

#### B. The Order Is Clearly Erroneous: The Official Transcript Directly Refutes the Finding That Plaintiff Refused to Answer

The factual premise of Doc. 55 — that Plaintiff was not participating in her deposition — is directly contradicted by the transcript. The following table, drawn from the deposition transcripts filed with this Court, provides ten representative examples of substantive answers Plaintiff gave during the two depositions. Defense counsel's assertion that Plaintiff provided "no answers" during approximately 12–13 hours of testimony (Dec. 17, 2025 Deposition Transcript, page 39, line 20) is demonstrably false:

| | |
|---|---|
| **Question:** And where do you currently reside?<br>**Answer:** Morrilton, Arkansas.<br>**Deposition:** First Deposition<br>**Transcript:** Page 3, Lines 15–16 | **Question:** Are you the one who drafted the language that we've read from the top of the page on Deposition Exhibit 3.369?<br>**Answer:** Since I'm not sure of the source of this information, I would ask you to look at the extensive information I submitted in my discovery responses that |

| | are directly from me concerning performance reviews. **Deposition:** First Deposition **Transcript:** Page 34, Lines 18–25 |
|---|---|
| **Question:** What race was he or nationality? **Answer:** To the best of my knowledge, Prakhar was from India. **Deposition:** First Deposition **Transcript:** Page 72, Lines 5–7 | **Question:** Are you recording this? **Answer:** Yes. **Deposition:** Second Deposition **Transcript:** Page 6, Lines 7–8 |
| **Question:** Which University in Arkansas did you attend? **Answer:** I attended the University of Arkansas. I also took some classes before attending the University of Arkansas, but I would have to refer back to my records for accuracy. **Deposition:** First Deposition **Transcript:** Page 6, Lines 18–22 | **Question:** Do you recognize Exhibit 3? Can you identify Exhibit 3? **Answer:** *"Looking at Exhibit 3, this is not what I submitted and I would refer you to either my amended or supplemental discovery responses."* **Deposition:** Second Deposition **Transcript:** Page 11, Lines 1–4 |
| **Question:** What year did you receive the Master's Degree from the University of Arkansas in the field of Computer Engineering? | **Question:** Did you prepare this Exhibit 3 for submission to the EEOC? **Answer:** "To the best of my recollection, this is not |

| | |
|---|---|
| **Answer:** I believe it was 2008.<br><br>**Deposition:** First Deposition<br><br>**Transcript:** Page 8, Lines 1–3 | what I submitted. If you would like to know what I did submit, please look at my verified amended and supplemental discovery responses." **Deposition:** Second Deposition<br><br>**Transcript:** Page 11, Lines 17–21 |
| **Question:** Do you understand those are Bates Stamps for the production you provided?<br><br>**Answer:** I don't know about this. Could you tell me where you got the document, please?<br><br>**Deposition:** First Deposition<br><br>**Transcript:** Page 31, Lines 2–3 | **Question:** Would you agree that at the bottom of every page of Exhibit 3 there's a Bates stamp?<br><br>**Answer:**<br><br>"There's a number or a code on this page, but I can't — I don't know about what's on every page. It's a lot of pages here. I don't know."<br><br>**Deposition:** Second Deposition<br><br>**Transcript:** Page 13, Lines 21–24 |

These are not the only answers Plaintiff gave — they are ten selected examples from two full sessions. Disagreement with an answer does not transform it into a refusal to answer. A deponent who says "that is not my document; please refer to my verified responses" has answered the question posed. The Federal Rules do not require a witness to adopt a false premise as true in order to comply with her deposition obligations.

The Magistrate Judge's decision to credit Defendant's counsel's mischaracterization of Plaintiff's testimony over Plaintiff's own explanation — and over the written transcript — is a clear error. An order may not rest on a finding that the official record disproves.

**C. The Order Violates Rule 30(d)(1) and Lacks the Required Good Cause Finding**

Federal Rule of Civil Procedure 30(d)(1) limits a deposition to one day of seven hours unless the court orders otherwise for good cause. Defendant has already consumed more than that time over two sessions. Defendant's own prior filing characterizes the first deposition alone as "nearly seven hours."

Good cause for additional time requires a showing of genuine need for information not yet obtained. There is no such showing here. The claimed basis for additional time — that Plaintiff was not answering questions — is contradicted by the transcript. What the record does show is that Defendant spent deposition time pressing Plaintiff to attempt to make her authenticate a document she disputed, repeatedly asking the same questions after receiving responsive answers, and pursuing a strategy the Rules do not permit: attempting to compel a witness to adopt an unverified document as authentic when she states it is not her work product.

Ordering a third deposition under these circumstances rewards Defendant for conduct that itself created the deposition impasse, while further burdening a pro se plaintiff of limited means who has already traveled over 600 miles for deposition proceedings alone at her own expense.

**D. The Order Is Contrary to Law: It Fails to Address Defendant's Violations of Rule 30(d)(3)**

Federal Rule of Civil Procedure 30(d)(3) authorizes a court to terminate or limit a deposition conducted "in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent". Both deposition transcripts reflect a sustained pattern of improper conduct by Walmart's Defense Counsel, Mr. Hutchinson, while questioning the Plaintiff during the depositions he demanded on Walmart's behalf:

- Repetitive questioning about Exhibit 3 over the course of both depositions, after Plaintiff had given responsive answers and after Magistrate Judge Comstock had intervened on at least three occasions;

- Argumentative questioning, including counsel narrating Plaintiff's response time on the record ("For the record, we've sat here for minutes…") and instructing Plaintiff that he did not need her to tell him "what it's not" — a demand that she abandon a truthful answer;

- Use of implicit threats of sanctions and judicial intervention as a pressure tactic before questions were asked (Dec. 17, 2025 Deposition Transcript, page 6, lines 24–25; page 7, lines 1–2, 21–22);

- Intrusive questioning about Plaintiff's personal recording device after she had already confirmed she was recording, shifting focus from the case to Plaintiff's privacy (Dec. 17, 2025 Deposition Transcript page 6, lines 9–14);

- Questioning conducted in disregard of Plaintiff's on-record medical accommodation statement (Dec. 17, 2025 Deposition Transcript page 5, lines 8–20);

- Material misrepresentations to the presiding Magistrate Judge about the content of Plaintiff's answers, causing the Court to issue directives based on false premises.

The May 13 Order not only fails to impose any limitations to address this conduct — it orders further deposition proceedings without any protective conditions whatsoever. This is contrary to the requirements of Rule 30(d)(3) and Rule 26(c). **(See Plaintiff's Exhibit 3 - 526 — Walmart Defense Counsel's improper conduct at depositions, including harassing, argumentative, compound, and repetitive questions directed at Plaintiff, with supporting transcript**

**excerpts.)**

**E. The Order Fails to Consider Less Restrictive Alternatives as Required by Rules 26 and 30**

Before ordering a third deposition — an uncommon measure granting Defendant a third opportunity to examine Plaintiff after already exhausting the presumptive time limit — the Court was required to consider whether less restrictive alternatives could address any legitimate remaining discovery need. Doc. 55 does not reflect that consideration.

Available alternatives include:

- Limiting any additional questioning strictly to new subject matter not previously covered in two sessions;
- Requiring Defendant to use Plaintiff's verified amended and supplemental discovery responses — served multiple times — rather than bringing unverified document compilations to the deposition;
- Permitting remote deposition to reduce Plaintiff's travel burden (approximately 280 miles with each trip from home to the Fayetteville, Arkansas courthouse) and health impact;
- Prohibiting repetitive, compound, argumentative, or harassing questioning;
- Requiring written questions under Rule 31 as a less burdensome alternative.

The failure to consider these alternatives before imposing a third unconditioned deposition on a pro se plaintiff with documented medical concerns and limited means renders Doc. 55 disproportionate under Rules 26(b)(1) and 26(c).

**F. The Order Does Not Account for Plaintiff's Documented Medical Concerns**

Plaintiff placed a formal medical accommodation statement on the record at the outset of the second deposition. (Dec. 17, 2025 Transcript, p. 5, ll. 8–20.) She had previously broken down in tears during the first deposition following hours of argumentative questioning. Following that deposition, she sought medical care and her physician documented that the litigation, and specifically the nature of the deposition, were contributing to health issues.

Doc. 55 does not acknowledge any of this. It orders a third deposition without any accommodation, restriction, or protective condition. This is inconsistent with the Court's obligation under Rule 26(c) to protect a party from undue burden or oppression.

### G. The Order Infringes Plaintiff's Statutory Right to Self-Representation

Pursuant to 28 U.S.C. § 1654, Plaintiff has the right to conduct her own case. To the extent Doc. 55 created a framework under which standby counsel would negotiate deposition scheduling directly with Defendant without Plaintiff's authorization, it impermissibly interfered with that right. Plaintiff does not object to cooperating with the Court; she objects to any framework that strips her of independent control over the logistics and strategy of her case. Plaintiff has consistently demonstrated her willingness to coordinate directly with Defendant's counsel and to meet her obligations as a litigant.

## IV. MOTION TO STAY ORDER (DOC. 55) PENDING DISTRICT COURT REVIEW

In addition to the foregoing Objections, Plaintiff respectfully moves this Court to stay the May 13, 2026, Order pending District Judge Fowlkes' review. Courts in this circuit consider four factors: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) injury to other parties; and (4) public interest.

First, Plaintiff has a strong likelihood of success. The factual finding underlying Doc. 55 is

directly contradicted by the deposition transcript, and the Order imposes a third deposition without the required good-cause finding under Rule 30(d)(1).

Second, absent a stay, Plaintiff faces irreparable harm. The June 30, 2026 deadline is imminent. Requiring Plaintiff to undergo a third deposition before the District Court can review this Order would impose the very burden Plaintiff seeks to avoid, and that harm cannot be undone after the fact. Given Plaintiff's documented medical concerns, the burden of an additional in-person deposition is particularly acute.

Third, a brief stay imposes no material harm on Defendant. Defendant will still be able to depose Plaintiff if the District Court overrules these Objections. A short delay for judicial review is not prejudicial.

Fourth, the public interest favors ensuring that discovery orders are grounded in accurate factual findings and comply with the Federal Rules, particularly in a case involving a pro se plaintiff asserting civil rights claims against a large high-profile corporate defendant.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Sustain Plaintiff's Objections and set aside Magistrate Judge Comstock's May 13, 2026 Order (Doc. 55) as clearly erroneous and contrary to law;

2. Stay the June 30, 2026 deposition deadline pending District Court review;

3. Find that Plaintiff has fully participated in discovery and that no third deposition is warranted;

4. In the alternative, if the Court determines additional questioning is necessary, enter a Protective Order under Fed. R. Civ. P. 26(c) requiring: (a) remote deposition format; (b)

prohibition on repetitive, compound, argumentative, or harassing questioning; and (c) use of Plaintiff's verified amended and supplemental discovery responses rather than Defendant's unverified document compilations

5.  <u>Grant such other and further relief as the Court deems just and proper.</u>

### <u>EXHIBITS</u>

Exhibits attached to this filing are designated with the suffix "- 526" to identify them as specific to this May 2026 filing.

| Exhibit | Exhibit Description |
| --- | --- |
| Exhibit 1 – 526 | A dated, itemized list of documented actions Plaintiff has taken to move her case forward as a pro se plaintiff, including court filings, mailings, emails, phone calls, miles traveled, out-of-pocket expenses, depositions attended, and settlement conference attended. |
| Exhibit 2 – 526 | Plaintiff's May 18, 2026 Email to Ms. Bookout Informing Ms. Bookout of Plaintiff's Pro Se Status.   Plaintiff explicitly stated that Ms. Bookout, and all other third parties, lacked authority to take any actions on Plaintiff's behalf. |
| Exhibit 3 – 526 | Walmart Defense Counsel's Improper Conduct at |

|  | Depositions including Improper Questions (Harassing, Argumentative, Compound, Repetitive with Transcript Excerpts)  Directed at Plaintiff at Depositions |
| --- | --- |
| Exhibit 4 – 526 | Plaintiff's May 21, 2026 Meet and Confer Email |
| Exhibit 5 – 526 | Mr. Hutchinson's May 21, 2026 Response Email to Plaintiff's May 21, 2026 Meet and Confer Email |

Respectfully submitted,

_____

Kelli Lee

Pro Se Plaintiff

905 W. Rock St., Morrilton, AR, 72110

kelli.j.lee1@gmail.com | (501) 289-1786

Dated:  5/26/2026


## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Notice was served on Tim Hutchinson, attorney for

Defendant, via email on **5/26/2026.**

Dated:  5/26/2026

Respectfully submitted,

/s/ Kelli Lee, Pro Se Plaintiff

905 W. Rock St., Morrilton, AR, 72110

kelli.j.lee1@gmail.com | (501) 289-1786