**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**KELLI LEE**                                                                                    **PLAINTIFF**


**v.**                                   **Case No.  5:24-CV-05190**


**WAL-MART STORES ARKANSAS, LLC**                                        **DEFENDANT**

---

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION**

---

Plaintiff Kelli Lee, proceeding pro se, respectfully submits these specific Objections to the

Magistrate Judge's Report and Recommendation (R&R) (ECF No. 68), filed on June 26, 2026.

Plaintiff requests that the District Judge conduct a de novo review of the record. The 17

objections detailed below demonstrate that the R&R relies on material inaccuracies,

mischaracterizes the discovery record, and applies improper legal standards.

**OBJECTION I: The R&R's Preliminary Summary Contains Material Clerical Errors and
Prejudicially Omits the Documented Multi-Month Timeline of Hostile Work Environment,
Harassment, Discrimination, and Retaliation to Which Plaintiff Was Subjected at
Walmart.**

- **Clerical and Administrative Misstatements:** The R&R fundamentally misstates the

    baseline record on Pages 1 and 7. It misspells Plaintiff's first name as "Kellie" instead of

    using Plaintiff's correct first name, "Kelli" (which was spelled correctly each time it was

1

used in Plaintiff's Complaint, ECF No. 2, Pages 1, 2, 10, and 11). It repeatedly asserts that the operative Complaint is docketed at ECF No. 1, which is exclusively the Civil Cover Sheet; the actual operative Complaint is ECF No. 2. Additionally, it mischaracterizes Plaintiff's professional title as "Software Engineer II" when she was employed as a Software Engineer III, downplaying her professional rank and standing (ECF No. 2, ¶ 19).

- **Prejudicial Omission of Continuous Timeline:** The R&R is written in a manner that omits critical facts of the case narrative by completely excluding a dense, documented, multi-month chronology, which serves to minimize the Plaintiff's claims (ECF No. 41 Priority Exhibit 0.2, 0.7). The record establishes that a continuous harassment and discrimination campaign against Plaintiff began almost immediately upon the assignment of her manager, Justin Kohley, in February 2023 and continued through her termination. Significant events Plaintiff experienced, which are documented in her court submissions, include:

    - **Feb 11–15, 2023:** Kohley is assigned as Plaintiff's manager and, four days later, strips Plaintiff of her administrator rights to the Data Platform/Guide Toggle Walmart Workplace group that she managed (ECF No. 41 Priority Exhibit 0.7, p. 4).

    - **Feb 24, 2023:** Kohley retroactively edits past positive performance reviews of Plaintiff in Workday to inject pretextual negative comments approximately two weeks after becoming Plaintiff's manager (ECF No. 2, p. 4, ¶ 24; ECF No. 41 Priority Exhibit 0.7, p. 4).

- **May 4, 2023: Protected Activity:** Plaintiff reports that the Team Tech Lead displays discriminatory bias toward her by refusing to review her engineering pull requests while reviewing male, Indian teammates' work. Following Plaintiff's report later that same day, management unfairly criticized Plaintiff's work during a gender-unbalanced meeting (ECF No. 41 Priority Exhibit 0.7, pp. 5, 6).

- **May 12–23, 2023: Protected Activities:** Plaintiff on more than one occasion explicitly reports harassment and disparate treatment to management (ECF No. 41 Priority Exhibit 0.7, pp. 6, 8).

- **May 31, 2023:** Management demands speculative timelines, creating a religious conflict regarding dishonest tracking; Kohley misquotes Plaintiff in writing to build a false disciplinary record (ECF No. 41 Priority Exhibit 0.7, pp. 8–9).

- **June 1–16, 2023:** Managers intensify bad-faith criticism of Plaintiff despite Plaintiff's written updates and active collaboration with her teammates (ECF No. 41 Priority Exhibit 0.7, pp. 10–16).

- **June 19, 2023:** Manager Kohley issues a retaliatory "Yellow Disciplinary Action" containing corrupt metrics in an attempt to force a falsified "action plan" (ECF No. 41 Priority Exhibit 0.7, p. 16).

- **June 27, 2023: Protected Activity:** Plaintiff escalates and reports harassment, bias, and the falsified disciplinary action through the corporate Walmart Open Door Program (ECF No. 41 Priority Exhibit 0.7, p. 20).

- **June 27 or 28, 2023: Immediate Escalation:** Manager Kohley publicly shames Plaintiff by intentionally using her personal Gmail address (kelli.j.lee@gmail.com) for a department-wide team-building event invitation,

3

rather than her standard corporate email (kelli.lee@walmart.com). While Kohley used Walmart corporate emails or the Digital Campus Distribution List for all other recipients, he singled Plaintiff out. By doing so, he insinuated to a large audience that she did not work for the company and sent a clear message to her colleagues that her career at Walmart was in jeopardy. Management also blocks her engineering cards to deny work-tracking credit (ECF No. 41 Priority Exhibit 0.7, pp. 20–21).

○ **July 6, 2023:** Plaintiff participates in an hour-long Open Door phone interview, reporting harassment and discrimination and disputing the falsified yellow disciplinary action filed by Kohley.

○ **July 6, 2023:** Management (Shreyas) publicly discriminates against and isolates Plaintiff in a team meeting by intentionally calling on her—the only female engineer present—dead last to present her work and findings, even though male engineers with less seniority were asked to present first (ECF No. 41 Priority Exhibit 0.7, pp. 22–23).

○ **July 13, 2023:** As requested by the Walmart Open Door program, Plaintiff reported her concerns to Sara Pollard (Justin and Shreyas's manager). Plaintiff provided a document containing evidence that: 1) the yellow disciplinary action filed against her had been falsified, 2) she had faced harassment and discrimination at work, and 3) she requested the removal of the yellow disciplinary action from her record and a new manager assignment other than Justin Kohley or Shreyas Lele. Kohley immediately canceled an online meeting in

4

an attempt to force an unsafe, in-person meeting in a windowless "blind office" to terminate Plaintiff's employment (ECF No. 41 Priority Exhibit 0.7, pp. 24–25).

- **July 14–17, 2023:** On Friday, July 14, 2023, two minutes after Kohley and Lele's manager sent Plaintiff a meeting request to uphold the false discipline, Kohley sent Plaintiff a meeting request for the morning of Monday, July 17, 2023, to remove Plaintiff from her position. On Monday, July 17, 2023—the very next business day—Plaintiff was removed from her position at Walmart, banned from Walmart buildings, and given a restrictive 45-day transfer window to find another position at Walmart or face termination. That same evening, Plaintiff was defamed by a newly manufactured, falsified "Orange Disciplinary Action" that Kohley entered into the Walmart system on Plaintiff's professional work record, further damaging her chances of securing a transfer at Walmart within the 45-day window before being completely terminated from Walmart employment (ECF No. 41 Priority Exhibit 0.7, pp. 24–28).

- **Sept 1, 2023:** Plaintiff is officially terminated as a direct consequence of being removed from her position and the false disciplinary actions damaging her internal transfer prospects (ECF No. 41 Priority Exhibit 0.7, p. 28).

**OBJECTION II: The R&R Erroneously Concludes that Plaintiff Refused to Participate in Discovery, While Omitting Defendant's Improper and Oppressive Litigation Tactics.**

**Plaintiff's Diligent Participation:** The R&R falsely implies Plaintiff stonewalled discovery. The record shows that this finding is false. Since assuming pro se status on

July 17, 2025, Plaintiff has taken the following documented steps (ECF No. 58 Exhibit 1-526) and more in this litigation:

- Appeared for two full depositions: September 12, 2025 (approximately 9:00 a.m. to 3:00–4:00 p.m., Russellville, Arkansas) and December 17, 2025 (9:30 a.m. to 12:43 p.m., at which time Defendant's counsel stopped the deposition, Fayetteville, Arkansas);

- Personally prepared and served Verified Amended Discovery Responses on August 26, 2025, and Verified Supplemental Discovery Responses on October 6, 2025, comprising 101 labeled exhibits and 11 audio recordings;

- Sent verified discovery responses to Defendant's counsel at least four times, including via email on December 31, 2025 (New Year's Eve);

- Filed over 100 exhibits with the Court as part of Docket Entry 41 (November 18, 2025), directly refuting Defendant's claims that materials were withheld;

- Emailed the Court approximately 28 times or more and called the Court at least 13 times or more in active case management;

- Sent approximately 22 emails or more to defense counsel to fulfill her discovery obligations and to move the case forward;

- Mailed signed and notarized deposition transcripts to the court reporter with tracking confirmation;

- Completed errata sheets for both depositions, signed and notarized;

- Filed a Notice to Clarify the Record Regarding Disputed Document Compilations on January 5, 2026, identifying specific alterations in Defendant's Exhibit 3;

- Traveled over 600 miles at her own expense for depositions demanded by Defendant as well as the resulting court proceedings. This travel included approximately 50 miles round trip for the first deposition in Russellville, AR, approximately 280 miles round trip to attend a court hearing in Fayetteville related to the first deposition, and approximately 280 miles round trip for the second deposition in Fayetteville—depositions that Defendant demanded, not depositions initiated by Plaintiff—all while Defendant's counsel was located near the Fayetteville courthouse;

- Attended in-person court proceedings, traveling hundreds of miles for each;

- Emailed the court reporter on December 25, 2025, to correct the court reporter's omission of an errata sheet for the December 17, 2025, deposition;

- Filed an Emergency Motion (ECF No. 26, August 11, 2025) when Defendant improperly noticed her deposition during the court-ordered abeyance period.

- **Omission of Defendant's Misconduct:** The R&R omits a systematic pattern of aggressive and improper defense tactics. Defendant improperly issued a deposition notice (ECF No. 25) on August 8, 2025, during a court-ordered, 30-day abeyance period intended for Plaintiff to transition after the withdrawal of her counsel (ECF No. 24). Rather than respecting the purpose and spirit of the Court's order, Defendant scheduled the deposition in a manner that forced Plaintiff to actively litigate the case without counsel during what was intended to be a protected transition period. Specifically, Defendant noticed the deposition to take place at its law firm's office—RMP LLP, 11601 Pleasant Ridge, Suite 301, Little Rock, AR 72212—on August 18, 2025, at 10:00 a.m. CST (ECF No. 25).

7

- Consequently, Plaintiff was forced to file an Emergency Motion to Reschedule and Change Location of Deposition during her abeyance period as a direct response to Defendant's improper notice. This motion was entered on the docket as ECF No. 26 on August 11, 2025. This filing became necessary because Defendant attempted to schedule Plaintiff's deposition for the first business day immediately following the expiration of the court-ordered abeyance period, despite the Court granting this abeyance specifically to provide Plaintiff with sufficient time to determine whether to proceed pro se or retain substitute counsel.

- Ultimately, the Court intervened and helped to reschedule the deposition date for September 12, 2025. **However,** the Defendant maintained the legal responsibility to issue a timely and reasonable notice of deposition containing the time and place **of the proceeding**. Defendant failed to meet this legal obligation. Instead, defense counsel withheld the notice until emailing it at 6:03 p.m. on September 11, 2025, forcing a *pro se* litigant to proceed on less than 15 hours' notice. During the deposition, defense counsel repeatedly badgered Plaintiff regarding natural pauses in her testimony, baselessly inquired if those pauses were due to "drug use," and demanded financial debit card details entirely outside the scope of this employment discrimination claim. Furthermore, Defendant brought Exhibit 3 to the deposition and attempted to make Plaintiff authenticate it—an unverified, 600+ page compilation of unknown origin that contained unauthorized additions, omissions, and alterations. Plaintiff refused to authenticate or accept this altered exhibit as her work.

8

- These alterations, additions, and omissions included reordering, deleting from, and editing Plaintiff's files, as well as inserting blank pages to deliberately manipulate the final document to a specific page count of 666 in bad faith.
- The R&R records the withdrawal of Plaintiff's prior counsel in a way that frames her case negatively but completely deletes the fact that Walmart's defense attorney, Mallory Shamoon, also withdrew via a granted motion on May 5, 2026 (ECF No. 53, 54).

**OBJECTION III: The R&R erroneously overlooks the superseding effect of Plaintiff's Verified Amended Discovery Responses (ECF No. 30).**

The R&R treats ECF No. 30, Plaintiff's Notice of Service of Amended Discovery Responses, as a passive, generic entry on page 2, failing to analyze the binding legal consequences of this filing under the Federal Rules of Civil Procedure. The express terms of the filing state that the Amended Discovery Responses were served "pursuant to the Federal Rules" and explicitly "supersede any prior responses." This document was formally served on defense counsel on August 26, 2025. By ignoring the superseding effect of this filing, the R&R erroneously permits the Defendant to rely on unverified documents instead of Plaintiff's operative, sworn, and verified discovery responses.

**OBJECTION IV: The R&R Inaccurately Characterizes a Lawful Rule 30(d)(3) Deposition Suspension as an Improper "Walk-Out" and Ignores Improper Defense Conduct Across Both Depositions.**

**Lawful Suspension Under Rule 30(d)(3):** The R&R inaccurately claims that Plaintiff "stood up... and left the room." The transcript, the Errata Sheet, and Plaintiff's related court filings (including ECF Nos. 31 and 33) collectively demonstrate that after hours of being subjected to

9

badgering and improper questioning by defense counsel, Plaintiff broke down in tears, twice requested a break, and then properly invoked her procedural rights on the record to lawfully suspend the deposition:

> **THE WITNESS**: This is really stressful for me, uh, the opposing counsel has been harassing and for that reason, the stress is getting to me. I am going to suspend the deposition, and file a motion with the Court. (ECF No. 47, Ex. 6, p. 78-79, as corrected by Plaintiff's Errata Sheet).

Plaintiff followed protocol precisely by filing her Motion to Terminate Deposition (ECF No. 31) on the very next business day. Federal Rule of Civil Procedure 30(d)(3) explicitly states that a deposition may be suspended if it is conducted in bad faith or in a manner that unreasonably "annoys, embarrasses, or oppresses" the deponent. Multiple court documents and exhibits submitted by Plaintiff demonstrate the improper questioning directed at her during Defendant's depositions, including argumentative, repetitive, and compound questioning (see, e.g., ECF No. 58, Ex. 3, p. 526; ECF No. 47, Exs. 1, 2, 3, 4; ECF No. 59; ECF No. 31; and ECF No. 33). A substantial portion of the second deposition centered on Defendant's Exhibit 3 — a document compilation that Plaintiff disputed throughout as not reflecting her original submissions. Before questions about Exhibit 3 even began, defense counsel used the threat of summoning Magistrate Judge Comstock as a pressure tactic:

> **COUNSEL**: *...your refusal to answer certain questions would necessitate me obtaining guidance from Judge Comstock. Do you understand that's why we're here?*
> *(Dec. 17, 2025 Transcript, page 6, lines 24–25; page 7, lines 1–2)*
> **COUNSEL**: *Okay. Well, let's take our first break and we'll get Judge Comstock in*

10

*here.*

*(Dec. 17, 2025 Transcript at page 7, lines 21–22.)*

Despite this pressure, Plaintiff answered the Exhibit 3 questions clearly and repeatedly. Her answers were: (1) that the document mischaracterized the evidence; (2) that it had an improper foundation; (3) that it was not what she submitted; and (4) that Defendant should consult her verified amended and supplemental discovery responses for what she actually submitted. The relevant exchange is reproduced below:

> **COUNSEL**: *Well, the question is, do you recognize Exhibit 3? Can you identify Exhibit 3?*
>
> **MS. LEE**: *Okay. For this question, objection. This question mischaracterizes the evidence and has an improper foundation. I don't accept what's implied by this question, and looking at Exhibit 3, this is not what I submitted and I would refer you to either my amended or supplemental discovery responses.*
>
> **COUNSEL**: *Ms. Lee, the question is, do you recognize Exhibit 3? Can you identify it? I don't need you to tell me what it's not. Do you recognize Exhibit 3?*
>
> **MS. LEE**: *This question has already been asked and answered and I stand by what I said previously, and part of that is this question has an improper foundation. I objected to it, and this is not what I submitted and I would refer you to what I did submit, which is my amended and supplemental discovery responses.*
>
> **Question**: *Ms. Lee, did you prepare this, Exhibit 3, for submission to the Equal Employment Opportunity Commission?*
>
> **Answer**: *MS. LEE: Objection. The question mischaracterizes the evidence and mischaracterizes my prior testimony and has an improper foundation. To the best*

11

*of my recollection, this is not what I submitted. If you would like to know what I did submit, please look at my verified amended and supplemental discovery responses.*

*Question:    So, are you refusing to answer the simple question, did you prepare this and submit it to the EEOC? It has nothing to do with the amended and supplemental. Is this what was submitted to the EEOC?*

**(Dec. 17, 2025 Deposition Transcript, pages 10–11.)**

Counsel's instruction that Plaintiff should not tell him ″what it's not″ is, in effect, a demand that she abandon a truthful answer and substitute the answer Defendant preferred. The Federal Rules do not permit this.

- **Defense Attempted to Block Notes Consultation**: The R&R states the transcript does not reflect that Lee checked her notes or provided an answer. This is a grave factual error; when Plaintiff attempted to reference her notes to ensure accurate recollection of two-year-old events, defense counsel aggressively ordered her to stop: *"No. I need you to close your notes and tell me what you remember"* (ECF No. 47, Ex. 6, pp. 78, Lines 6-7).

- **Omission of Pervasive Harassment**: The R&R ignores documented abuses under ECF Nos. 31, 33, 47 and its exhibits, and 58 and its exhibits, including counsel demanding she read text inscribed on her personal jewelry aloud, invading her privacy via non-revenue business bank account demands, and narrating minor pauses into the record despite an explanation regarding a necessary procedural accommodation for a medical condition.

- **Refusal to Authenticate Altered Binder**: The R&R faults Plaintiff for "refusing to answer questions" about a 600-page binder. Plaintiff acted with complete legal honesty by refusing to blindly authenticate a formatted compilation of unknown origin that

12

contained unauthorized alteration, additions and omissions, directing counsel instead to her Verified Amended Discovery Responses: *"Sir, I don't mind looking at this, but since this isn't part of the Amended Discovery Responses... I would need to go back to the notes that I made"* (ECF No. 47, Ex. 6, p. 57).

**OBJECTION V: The R&R Erroneously Omits the Sworn, Evidentiary Status of Plaintiff's Verified Supplemental Discovery Responses (ECF No. 35).**

On page 4, the R&R trivializes ECF No. 35 as a generic, passive notice. In reality, these were Verified Supplemental Discovery Responses that Plaintiff voluntarily submitted, personally prepared, and signed under oath, making them active evidence. This production brought forward an updated chronological Timeline of Events, organized Plaintiff's existing evidence, and was served on defense counsel on October 6, 2025. Minimizing this submission misleads the Court into believing Plaintiff was idle or non-compliant.

**OBJECTION VI: Erroneous Findings and Legal Errors Regarding Defendant's Motion to Compel (ECF No. 41).**

**A. Erroneous Finding of a "Good Faith" Conferral Under Rule 37(a)(1)**

The R&R accepts Defendant's certification of a "good faith conferral" letter dated October 27, 2025 (ECF No. 41 Priority Exhibit 0.5). The record shows Defendant refused direct communication, sending an indirect threat letter via a paralegal that was riddled with flagrant misquotes of Plaintiff's responses (ECF No. 41 Priority Exhibit 0.5; ECF No. 41, Sec. III.D). On November 4, 2025, Plaintiff responded with a detailed letter (ECF No. 41 Priority Exhibit. 0.4) correcting the record, demonstrating that materials were already produced, and offering an explicit

compromise (a signed, notarized Sworn Earnings Statement as an attempt at resolving RFP No. 10). Defendant completely ignored this compromise and rushed to file its Motion to Compel, failing the standard of Rule 37(a)(1).

**B. Prejudicial Devaluation of Plaintiff's Massive Production History**

The R&R dismissively states that 113 exhibits attached to Plaintiff's Response "appear to be some or all" of her discovery, framing compliance as defiance. The record proves Plaintiff included both her full verified Amended Discovery Responses and her Verified Supplement Discovery Responses which she had already provided to defendant prior to its filing of its Motion to Compel, she also produced a 28-page verified Proof of Production Index (ECF 41 Priority Exhibit. 0.1) that showed what she had already produced to Defendant by systematically linking every single discovery request propounded by Defendant to the exact exhibit number and page where the responsive evidence was previously delivered multiple times to Defendant (ECF No. 41).

**C. Manifest Error in Failing to Address Defendant's Structural Alteration of Requests**

The R&R ignores undisputed record evidence that Defendant structurally altered the substance of its Interrogatories and Requests for Production between what was originally served on Plaintiff and what Defendant presented to the Court. Plaintiff submitted photographic evidence of the original requests when she noticed that Defendant had altered them, providing side-by-side images of what Defendant inaccurately claimed it requested and highlighting the differences in yellow (ECF No. 41 Priority Exhibit 0.1, pages 13 and 16). The R&R completely overlooked this documented bait-and-switch.

14

**OBJECTION VII: The R&R Flagrantly Distorts the December 17, 2025 Deposition Record**

The R&R's summary on Pages 5–6 turns the actual events of the second deposition upside down:

- **The R&R Inaccurately Claims the Deposition Commenced with Plaintiff's Objections, When the Proceeding Actually Began with Plaintiff Reading a Medical Accommodation Statement Before Questioning Commenced.** The R&R inaccurately claims the session "commenced with Lee's multiple objections." The official transcript demonstrates that this statement is false. At the start of the deposition, before questioning began, Plaintiff placed a formal statement on the record as follows:

*"MS. LEE: One thing before we get started, there's some things I need to read just to get started out and I want to place a statement on the record regarding a necessary procedural accommodation for a documented medical condition. As evidenced by a note from my medical provider, the intensity of this litigation has significantly impacted my health. To ensure I can provide accurate and complete testimony, I'm asserting my right to the following reasonable medical accommodations. The first is hourly breaks, a break of approximately ten minutes. I need that to occur at least once every hour. And number two, responsive breaks. I reserve the right to request a short additional break following any period of intense or overly argumentative questioning to manage my condition. I ask for your cooperation and adhering to the schedule so that we may proceed as efficiently as possible. So, what is intense? I define intense questioning as questioning that refers to a tone or pace that triggers a physical or cognitive symptoms of my documented condition. And also I'm requesting the errata sheet. And for the record, before we proceed, I'm exercising my right to review the deposition transcript and submit and then write a sheet as permitted under the applicable rules.*

*MR. HUTCHINSON: Okay. Your statement's been noted. You ready?*

*MS. LEE: Ready."* p. 5, line 8 to p. 6, line 6, December 17, 2025, Deposition Transcript (ECF No. 47, Ex. 4, p. 1).

15

- **Weaponized Judicial Threats**: The R&R ignores that defense counsel immediately weaponized the threat of summoning the Magistrate Judge to try to force Plaintiff to abandon her verified responses and adopt Walmart's inaccurate preferred answers which Plaintiff did not do. (ECF 47 Exhibit 6 | (Dec. 17 Transcript, pp. 6–7).

- **Truthful Answers Framed as Refusals**: Plaintiff did not refuse to answer questions about the 600-page Exhibit 3; she gave a highly specific factual answer: that Exhibit 3 was a disputed compilation that did not reflect what she submitted, and she repeatedly directed counsel to her authentic, court-filed responses as follows:

  *MS. LEE: Okay. For this question, objection. This question mischaracterizes the evidence and has an improper foundation. I don't accept what's implied by this question, and looking at Exhibit 3, this is not what I submitted and I would refer you to either my amended or supplemental discovery responses.* (Dec. 17, 2025 Deposition Transcript, pp. 10–11).

  Plaintiff stating that Defendant's presented compilation is not what she submitted is the only truthful answer possible under penalty of perjury.

- **Refusal to Review Transcript in Real-Time:** When defense counsel halted the deposition and falsely represented that Plaintiff "refused to answer if she could recognize... Exhibit 3," the Magistrate Judge who wrote the R&R explicitly refused to verify the transcript, openly stating: "I don't believe that the court reporter and Mr. Hutchinson would be saying that you weren't answering if you were making an answer..." (Dec. 17 Transcript, p. 25). Deferring to defense counsel's verbal assertions over the deposition record is a structural error.

- **Unilateral Defense Termination**: The R&R implies Plaintiff's non-participation forced the termination of the deposition. The transcript proves Plaintiff remained present, under

16

oath, and ready to testify; it was Defendant's counsel who strategically moved to stay the deposition to pursue sanctions: *"MR. HUTCHINSON: Yes, Your Honor. I would move that this deposition be stayed until the Court rules on my previous filed motion, which is motion for sanctions."* (Dec. 17, 2025 Transcript, p. 39, ECF 47 Exhibit 6).

- **Provably False Inflation of Deposition Hours**: The R&R blindly rubber-stamps Walmart's claim that counsel spent "a total of 12-13 deposition hours over the 2 depositions" without checking the record to see if it was false.

## OBJECTION VIII: The R&R Erroneously Trivializes Sworn Proof of Document Alteration and Record Distortion (ECF No. 42).

The R&R trivializes Plaintiff's "Notice to Clarify the Record Regarding Disputed Document Compilations" (ECF No. 42) as a complaint that two sets of documents are not "identical." Plaintiff filed this notice under penalty of perjury with a sworn declaration and side-by-side exhibits systematically documenting that Defendant's 600+-page "Exhibit 3" contained unauthorized physical alterations, additions, and omissions. Specifically, Plaintiff described the following alterations in Defendant's presented Exhibit 3: Altered Primary Timeline, Spliced or Composited Content, Cropped or Cut-Off Emails, Cropped or Cut-Off Teams Messages (Non-Email), Altered Walmart Open Door Complaints, Removal of Work Ticket Information, Partial Pages / Clipped Content, Altered Zoom Meeting Invitation Information and Messages, Removal of Access to Audio Files and Summaries, Added Bates Stamps and Exhibit Identifiers, Cropped or Cut-Off Images of Plaintiff Working with Teammates, Global Reordering and Reformatting of Non-Timeline Documents, Added Blank Pages / Pagination Alteration, Page Rotation / Orientation Alteration, among other discrepancies.

17

To ensure an uncorrupted view after the ECF system rotated her side-by-side comparison exhibits sideways, Plaintiff conventionally filed a physical USB drive (ECF Nos. 44, 45) containing intact landscape orientations and functioning hyperlinks, which the R&R ignored.

**OBJECTION IX: The R&R Erroneously Adopts Defendant's Hyperbolic Motion to Dismiss Narrative and Fails to Independently Evaluate the Transcript Record.**

The R&R acts as an uncritical conduit for Walmart's narrative, repeating argumentative soundbites, including the demonstrably false claim that "counsel had spent a total of 12-13 deposition hours over the 2 depositions but had obtained almost no answers to any questions," (R&R page 6). This is inaccurate. The official transcripts contain numerous direct, substantive answers regarding basic background, educational history, and specific discovery links that completely demolish the "no answers" claim, as well as legally valid answers and objections to improper questions that defense counsel insisted on asking Plaintiff:

| | |
|---|---|
| **Question:** And where do you currently reside?<br>**Answer:** Morrilton, Arkansas.<br>**Deposition:** First Deposition<br>**Transcript:** Page 3, Lines 15–16 | **Question:** Are you the one who drafted the language that we've read from the top of the page on Deposition Exhibit 3.369?<br>**Answer:** Since I'm not sure of the source of this information, I would ask you to look at the extensive information I submitted in my discovery responses that are directly from me concerning performance reviews.<br>**Deposition:** First Deposition<br>**Transcript:** Page 34, Lines 18–25 |

| | |
|---|---|
| **Question:** What race was he or nationality? **Answer:** To the best of my knowledge, Prakhar was from India. **Deposition:** First Deposition **Transcript:** Page 72, Lines 5–7 | **Question:** Are you recording this? **Answer:** Yes. **Deposition:** Second Deposition **Transcript:** Page 6, Lines 7–8 |
| **Question:** Which University in Arkansas did you attend? **Answer:** I attended the University of Arkansas. I also took some classes before attending the University of Arkansas, but I would have to refer back to my records for accuracy. **Deposition:** First Deposition **Transcript:** Page 6, Lines 18–22 | **Question:** Do you recognize Exhibit 3? Can you identify Exhibit 3? **Answer:** *"Looking at Exhibit 3, this is not what I submitted and I would refer you to either my amended or supplemental discovery responses."* **Deposition:** Second Deposition **Transcript:** Page 11, Lines 1–4 |
| **Question:** What year did you receive the Master's Degree from the University of Arkansas in the field of Computer Engineering? **Answer:** I believe it was 2008. **Deposition:** First Deposition **Transcript:** Page 8, Lines 1–3 | **Question:** Did you prepare this Exhibit 3 for submission to the EEOC? **Answer:** "To the best of my recollection, this is not what I submitted. If you would like to know what I did submit, please look at my verified amended and supplemental discovery responses." **Deposition:** Second Deposition **Transcript:** Page 11, Lines 17–21 |

| | |
|---|---|
| **Question:** Do you understand those are Bates Stamps for the production you provided?<br><br> **Answer:** I don't know about this. Could you tell me where you got the document, please?<br><br>**Deposition:** First Deposition<br>**Transcript:** Page 31, Lines 2–3 | **Question:** Would you agree that at the bottom of every page of Exhibit 3 there's a Bates stamp?<br> **Answer:**<br> "There's a number or a code on this page, but I can't — I don't know about what's on every page. It's a lot of pages here. I don't know."<br><br> **Deposition:** Second Deposition<br> **Transcript:** Page 13, Lines 21–24 |

The R&R further omits Plaintiff's 12 objective supporting exhibits (ECF No. 47) documenting defense counsel's repetitive and compound questioning, reliance on an uncertified transcript, and her medical accommodation statement that the hostile nature of the deposition directly contributed to severe health issues.

**OBJECTION X: Clear Error in the R&R's Minimization of the Factual Scope of Discrimination and Unjustified Rejection of Plaintiff's Natural Memory Bounds.**

The R&R frames the dispute around a narrow window, stating that the "alleged discrimination occurred in the summer of 2023." This is a massive mischaracterization of the active discovery file, which outlines a systematic campaign spanning multiple months, with events in February 2023 and continuing through her final termination on September 1, 2023. By erroneously condensing this entire multi-month pattern into a brief "summer" event, the R&R creates a false premise. The R&R further errs by judging the natural limits of human memory for another person when recalling years-old events during the stress of a deposition, particularly while being forced to look at documents that Plaintiff could not personally verify or authenticate. Declaring that it "cannot agree" that a two-year memory gap is natural and reasonable sets a legally

20

unrecognized standard designed to penalize a pro se litigant for refusing to guess or lie under cross-examination regarding an exhibit from the defense's binder.

**OBJECTION XI: The R&R Erroneously Penalizes Plaintiff for Protecting the Integrity of Evidentiary Files and Misconstrues Her Legal Position as "Obstinacy."**

The R&R claims on Page 8 that Plaintiff *"obstinately maintains her untenable position that Walmart cannot use or rely upon any prior discovery materials because they are 'altered' or 'unverified'"*. Plaintiff did answer; she explicitly testified during her December 17, 2025 deposition that the compilation was not what she submitted, lacked a proper foundation and directed counsel to her verified responses if they wanted to know what she did submit. Plaintiff filed a formal Notice of Service of Amended Discovery Responses on August 26, 2025 (ECF No. 30), which legally superseded all prior unverified materials under the Federal Rules. Protecting the record from an unverified, 600+ page modified document compilation that she never approved or signed is a necessary measure to ensure evidentiary integrity, not a sign of obstinacy.

**OBJECTION XII: The R&R Erroneously Shifts the Discovery Burden to Plaintiff and Materially Omits Critical History Regarding Her Procedural Rights**. The R&R states that during the intervening weeks, Plaintiff "has not agreed to resume her deposition or 'coordinated' with Walmart's counsel regarding 'logistics'" (Page 9). This turns the Federal Rules on their head. Under the Federal Rules, it is the obligation of the examining party (the Defendant) to issue a formal Notice of Deposition specifying the time, date, and location. Plaintiff is under no legal obligation to solicit her own deposition, and at no point during the relevant timeframe did Defendant's counsel contact Plaintiff to schedule or issue a notice of deposition.  The R&R inaccurately frames the intervening weeks as a period of defiance, completely erasing the active

21

objection and stay litigation Plaintiff was pursuing. Plaintiff exercised her absolute statutory right to have a non-dispositive order (ECF No. 55) reviewed by the District Judge by filing a Motion for District Court Review (ECF No. 58) and a Motion to Stay (ECF No. 59) on May 26, 2026. Rather than allowing the assigned District Judge to independently evaluate Plaintiff's objections, the Magistrate Judge intervened, issued text-only orders denying the review as "moot" (ECF Nos. 66, 67), and issued this R&R four days later to recommend the total dismissal of her lawsuit.

**OBJECTION XIII: The R&R's Finding That Plaintiff "Refused to Participate" in Depositions is Refuted by Out-of-Pocket Travel and Written Records.**

The conclusion (pp. 9–10) that Plaintiff "essentially refused to satisfy her obligation" is directly refuted by deposition transcripts and the record at ECF No. 58, Exhibit 1. Plaintiff complied with court orders by driving hundreds of miles round-trip entirely out-of-pocket to sessions in Russellville and the Fayetteville Federal Courthouse, remaining available at the second session from 9:30 AM until defense counsel unilaterally terminated questioning at 12:43 PM to pursue sanctions. Plaintiff was also forced to endure depositions exceeding the standard seven-hour limit because the Magistrate Judge waived the rule to grant Defendant extra time. Furthermore, ECF No. 58-1 flatly contradicts the R&R by cataloging 45 distinct, affirmative actions proving Plaintiff's good faith, including driving a 220-mile round-trip to Fort Smith for a settlement conference, executing timely notarized errata sheets, and mailing physical USB backups to protect evidence integrity.

**OBJECTION XIV: The R&R Erred in Recommending the Terminal Dismissal of Plaintiff's Case.**

Plaintiff has driven hundreds of miles, produced over 100 exhibits, and actively participated in discovery despite facing aggressive, oppressive deposition tactics. Defense counsel weaponized irrelevant inquiries about Plaintiff's personal jewelry, leveraged repetitive, compound, and argumentative questions, and denied her request to have her mother sit quietly as a passive support person while Defendant brought multiple representatives. Plaintiff endured these hostile conditions while simultaneously managing severe stress and litigation-induced health issues caused directly by Defendant's improper conduct. Recommending the extreme sanction of dismissal under these circumstances constitutes a clear abuse of discretion. The Magistrate Judge explicitly declines to grant Walmart's Motion on the basis of Rule 37(d) on Page 11 and Instead, the R&R recommends dismissal under Rule 41(b) for failure to comply with an order of the court. Defendant moved for dismissal under Rule 37, and Plaintiff tailored her entire opposition brief to counter that specific standard. Recommending a dismissal under an entirely unbriefed rule without providing the Plaintiff explicit notice and an opportunity to respond deprives her of due process and constitutes reversible legal error.

**OBJECTION XV: The R&R Inaccurately Frames the Lawful Right to Self-Representation and Updating Phone Records as Acts of Obstructive Defiance.**

The R&R uses highly pejorative phrasing on Pages 11–12, asserting that Plaintiff *"cut off her nose to spite her face"* by declining the appointment of standby counsel, claiming she defiantly *"removed her telephone number from the Court's file"* and provided *"no substantive responses over several more hours"*. This finding is flatly disproved by the written transcripts. Plaintiff declined standby counsel to preserve her absolute right to self-representation under 28 U.S.C. § 1654, explicitly noting in her email (ECF No. 58-2) her intent to manage logistics directly if a third deposition was ultimately required. As documented in her May 18, 2026 email, her

23

previous phone number was no longer in service; she removed it to ensure an accurate record and requested all future communications remain in writing via email because she had no permanent work phone number at the time of the filing.  The claim that the second deposition impasse stretched over "several hours" is mathematically incorrect; the session only ran for approximately 3 hours and 13 minutes before defense counsel walked away to pursue sanctions, while Plaintiff remained present and willing to testify.

**OBJECTION XVI: The R&R Employs a Prejudicial and Scientifically Flawed Cognitive Leap Regarding Plaintiff's Medical Conduct and Written Filings.**

The R&R states on Pages 12–13 that Plaintiff *"has not presented the undersigned with any medical documentation"* and that her health concerns lack *"verifiable support in the record"*. This is directly contradicted by Page 5 of the December 17, 2025 transcript, where Plaintiff explicitly invoked her medical provider's note on the record. She repeatedly put the Court on notice regarding her severe emotional distress, detailing how she broke down in tears due to counsel's hostile questions regarding illegal drug use (ECF Nos. 31, 33, 47 Exhibit 4).

The Magistrate Judge's assertion that because Plaintiff's written filings are "timely, organized and coherent," her stress-induced breakdowns or pauses during live depositions were entirely "within her control" and constitute "obstructive behavior" is a flawed cognitive leap. There is a vast qualitative difference between drafting motions in a self-paced, secure environment and an unrepresented individual enduring hours of intense, hostile cross-examination by experienced defense counsel. Penalizing a pro se litigant for producing organized paperwork by using it to dismiss her documented medical distress is highly prejudicial and violates due process.

24

**CONCLUSION**

For the reasons set forth above, the Magistrate Judge's Report and Recommendation (ECF No. 68) relies on manifest errors of fact, mischaracterizes the discovery record, and applies incorrect legal standards. To dismiss this action under these circumstances would constitute a profound miscarriage of justice and an abuse of discretion.

Plaintiff respectfully requests that the District Judge:

1. Conduct a *de novo* review of the portions of the R&R objected to herein;

2. **REJECT** the Magistrate Judge's Report and Recommendation in its entirety;

3. **DENY** Defendant's Motion for Sanctions and Motion to Dismiss; and

4. Order such other and further relief as the Court deems just and proper.

Dated:  7/10/2026

Respectfully submitted,

_____

Kelli Lee, Pro Se Plaintiff
905 W. Rock St., Morrilton, AR, 72110 | kelli.j.lee1@gmail.com | (501) 289-1786
Dated: 7/10/2026

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Notice was served on Tim Hutchinson, attorney for Defendant, via email on 7/10/2026**.**
Dated: 7/10/2026
Respectfully submitted,
/s/ Kelli Lee, Pro Se Plaintiff
905 W. Rock St., Morrilton, AR, 72110 | (501) 289-1786 | kelli.j.lee1@gmail.com